**Peter HELMAN and Lori Helman**

v.

**PLUMBERS & STEAMFITTERS LOCAL 166 HEALTH & WELFARE TRUST, and Indiana Pipe Trades Health & Welfare Plan.**

Civ. No. F 91–288.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Sept. 11, 1992.

John M. Clifton and Alan VerPlanck, Fort Wayne, Ind., for plaintiffs.

Max Hobbs, Fort Wayne, Ind., Richard J. Shagley, Terri Haute, Ind., for defendants.

1. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

2. The Defendants are the Plumbers & Steamfitters Local 166 Health & Welfare Trust ("the

## MEMORANDUM OF DECISION AND ORDER

COSBEY, United States Magistrate Judge.

This matter is before the court[1] on two motions for partial summary judgment: one filed by the Plaintiffs, Peter Helman ("Peter") and Lori Helman (referred to collectively as simply "Plaintiffs"); and a second filed by the Defendants.[2] Briefs have been submitted and the Defendants have submitted an "Annex" to their motion for summary judgment containing various exhibits as well as an affidavit from the Administrative Manager of the Plan, Timothy Thacker.

This case finds its jurisdictional base in the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* What the respective motions ask the Court to do seems simple: define the standard of review under ERISA that the court is to apply to the Defendants' interpretation of a term ("experimental") found in the Plan. The point is relevant because the Defendants' interpretation of "experimental" has resulted in the denial of coverage to Peter for a medical procedure deemed necessary to save his life. While facially simple, the point actually becomes, upon further examination, a bit complex. A look at the facts will help.

## FACTUAL BACKGROUND

Peter is a member of the Plumbers & Steamfitters Union, Local 166. As such, Peter is a participant in, and a beneficiary of the Pipe Trade's Health and Welfare Plan, and the Local's Trust (which operates apparently as a supplemental plan for catastrophic coverage). 29 U.S.C. § 1002(8), (9).

In the summer of 1991, Peter was diagnosed as having rhabdomyosarcoma, a cancer of soft tissue, generally found in children and rarely seen in adults. Ultimately,

Trust"), and the Indiana Pipe Trades Health & Welfare Plan ("the Plan") and they will sometimes be referred to collectively as "the Defendants".

Peter's treating physicians recommended an autologous bone marrow transplant ("ABMT") procedure together with chemotherapy.

The ABMT procedure was succinctly described by the Third Circuit Court of Appeals in *Clark v. K–Mart Corp.*, No. 91–3723, 1992 WL 106935, *2, 1992 U.S.App.LEXIS 11543, at *4–5 (3rd Cir. May 22, 1992) as follows:

[ABMT] is a procedure of relatively recent origin whereby a patient is given extremely high, lethal doses of chemotherapy, far more than the patient could tolerate during conventional chemotherapy. The patient must first undergo an initial procedure wherein bone marrow cells are removed and stored outside the body. In some circumstances the bone marrow is purged while it is outside the body in an effort to destroy microscopic residual cancer cells. The bone marrow cells are later reinjected into the patient after the course of massive dose chemotherapy has been completed.

Peter's treatment was estimated to cost between $200,000 and $300,000. The University of Chicago Medical Center, which was to perform the treatment, required Peter to confirm proof of medical insurance coverage before the Medical Center would accept him as a patient. Peter sought confirmation from the Plan and the Trust.

Both the Plan (Exhibit A to Defendants' Motion for Partial Summary Judgment) and the Plan's Summary Plan Description (Exhibit C to the Defendants' Motion for Partial Summary Judgment) listed a number of "Exclusions and Limitations on Benefits" and, more particularly for our purposes here, contained the following language:

No benefits will be paid from the fund for any expense incurred as a result of: ... (d) services or supplies which are not provided in accordance with generally accepted professional medical standards or for experimental or investigative treat-ment which has not proved to be safe and effective[.]

By December 4, 1991, Peter was informed through his attorney that the Trust would deny coverage because a "physician consultant" for the Trust's reinsurer had opined that the proposed treatment was indeed experimental and did "not meet the requirements for coverage as determined by the Health Care Financing Administration of the Department of Health and Human Services." *See* December 4, 1991, letter from Administrative Concepts, Inc. attached to the Plaintiffs' complaint. The Plan also denied coverage apparently for the same reason.

Having been so advised, Peter filed this lawsuit on December 23, 1991, under the provisions of 29 U.S.C. § 1132(1)(B) to enforce his rights under the Plan and the Trust and also sought a preliminary injunction from the court to prevent the Defendants from denying benefits so that he could obtain the necessary treatment. This court, with the Honorable William C. Lee, Judge of the District Court presiding, granted the preliminary injunction on January 7, 1992, and the Trust and the Plan were ordered to provide coverage for Peter.

The issue before the Court today concerns the standard to be applied to the interpretation given to the term "experimental" by the Plan and Trust trustees.[3] Notably, the term "experimental" is not otherwise defined within the Plan and Trust documents, therefore the Trust and Plan have apparently latched onto the definitional phrase posed by the "physician consultant"; that is, "experimental" means "not meet[ing] the requirements for coverage as determined by the Health Care Financing Administration of the Department of Health and Human Services." These "requirements" are not otherwise described.

The Defendants suggest that certain language within the terms of the Trust and Plan gives the trustees discretionary au-

---

**3.** The trustees are essentially the "Plan Administrator." *See* the Welfare Plan Agreement and Declaration of Trust, § 2.1(m) (Exhibit B to the Defendants' Motion for Partial Summary Judgment).

thority to construe and interpret the Trust and Plan terms. Although the Defendants actually point to a number of sections within the documents for a grant of discretionary authority only a few are arguably pertinent. First, Section 6.1(n) of the Trust Agreement (Exhibit B to the Defendants' Motion for Partial Summary Judgment) states that the trustees "have the following discretionary powers and authority in the administration of the trust fund;"

> To adopt policies to promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the trust fund, provided the same are not inconsistent with the terms of this trust agreement. All policies, rules, and regulations adopted by action of the trustees shall be binding upon all parties hereto, all parties dealing with the trust fund and all persons claiming any benefits hereunder.

Further, as stated in Section 10 of the Plan document (Exhibit A to the Defendants' Motion for Partial Summary Judgment):

> Should any difference arise between the fund office and any eligible employee applying for benefits under the Health and Welfare Plan as to such eligible employee's rights to such benefits or the amount of such benefits, the matter shall be referred to the trustees for decision.

Finally, the Summary Plan Description (Exhibit C to the Defendants' Motion for Partial Summary Judgment) contained this note at page 21.

> ONE WORD OF CAUTION—no one has the authority to speak for the Trustees in explaining the eligibility rules or

benefits of the fund, except the full Board of Trustees or the Funds Administrator to whom such authority has been delegated.[4]

Having now discussed the relevant and undisputed facts, the Court will next discuss the summary judgment principles that apply to this case.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not suffi-

---

4. The Defendants have included in their Annex a new Summary Plan Description effective January 1, 1992, (Exhibit D to the Defendants' Motion for Partial Summary Judgment) however, that document is not relevant to the decision here. Despite the assertion that it was effective "at the time Plaintiffs made their claims" (*see* Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment, pg. 5) the "claims" were clearly made prior to January 1, 1992, as noted in the Court's Order of January 7, 1992, and as noted in the December 4, 1991, letter from Administrative Concepts, Inc. attached to the Plaintiffs' complaint. Certainly, a

claim had been made prior to January 1, 1992, within the meaning of 29 C.F.R. § 2560.503-1(d)(e). Therefore, if the Summary Plan Description in effect since January 1, 1992, contains more expansive language so as to allow the Plan Administrator to construe and interpret the Plan, it does not follow that pre-January 1, 1992, interpretations are somehow entitled to more deference. Moreover, despite the fact that the new Summary Plan Description suggests that the trustees now have the authority to interpret, there is nothing within the Plan documents themselves that demonstrates how, or from where, this "authority" emanates.

cient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* 477 U.S. at 251, 106 S.Ct. at 2512; *In Re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Twp. High School Dist. No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir. 1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 247, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R.Civ.P. 56(c), (e). To establish a genuine issue of fact the non-moving party "must

do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355; *First Nat'l Bank of Cicero v. Lewco Sec. Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

## DISCUSSION

 The issue before the Court today is whether the Plan and Trust's interpretation of the term "experimental" as "not meet[ing] the requirements for coverage as determined by the Health Care Financing Administration of the Department of Health and Human Services" should receive a *de novo* standard of review, or whether the more deferential "abuse of discretion" or "arbitrary and capricious" standard of review applies. This inquiry becomes relevant because the United States Supreme Court in the case of *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) held that the denial of benefits by an ERISA plan administrator must "be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan." *Id.* at 114, 109 S.Ct. at 956. However, denial of benefits under ERISA is to be reviewed under a more deferential standard where the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits, or to construe the terms of the plan. *Id.* at 115, 109 S.Ct. at 956. Ultimately, it will be the conclusion of the Court that none of the Plan or Trust documents has given the Plan Administrator here discretionary authority to construe and interpret the Plan and that therefore a *de novo* standard of

review should be applied to the interpretation given to the term "experimental."[5]

While the Defendants initially agreed that a *de novo* standard of review was appropriate (*see* January 7, 1992 Order, pg. 8) they apparently have changed their mind and now argue that the court should apply an "arbitrary and capricious" standard to their interpretation of the Plan language. While ordinarily courts are bound by stipulations of litigants, that rule cannot be invoked to bind or circumscribe a court in its determination of a question of law. 73 Am.Jur.2d, *Stipulations* § 5. In fact, practically all jurisdictions recognize that stipulations as to the law are invalid and ineffective. *Id.*

Therefore, an examination of the Plan documents is necessary to ascertain whether any of them grants a power to the trustees to "construe and interpret" the Plan so as to trigger a more deferential review. *See Ziaee v. Vest*, 916 F.2d 1204, 1206–1207 (7th Cir.1990). That is, unless an ERISA plan empowers the Plan's trustees to construe doubtful or contested terms, the court is to interpret the Plan independently and give no deference to the trustees interpretation. *Fuller v. CBT, Corp.*, 905 F.2d 1055 (7th Cir.1990), *citing, Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948.

Unfortunately for the Defendants, nothing in the Plan or Trust documents amounts to a grant of power to "construe and interpret the plan so as to require deferential review." *Ziaee*, 916 F.2d at 1206–1207. In fact, the Summary Plan Description only affords the trustees the latitude to explain the eligibility rules and benefits of the fund.[6] While "explain" can be somewhat synonymous with "interpret" or "construe" the latter two terms have special implications. *See The American Heritage Dictionary of the English Lan-*guage, (1979 Edition, pg. 462). Clearly, if the trustees had wanted to take advantage of the special implications that exist within the meaning of those terms, particularly after the *Firestone* case, they could have done so by amending their Trust and Plan documents. Apparently the trustees ulti-·mately came to recognize this point too, because they eventually changed the word "explaining" to "interpreting" in the Summary Plan Description effective January 1, 1992. *See* Exhibit D to the Defendants' Motion for Partial Summary Judgment. By then, of course, it was too late. *See* footnote 3, *supra.*

All that the Defendants have left to their discretionary authority argument are some references to a grant of power giving them authority to make "final" decisions regarding eligibility or benefits. *See* Exhibit A to the Defendants' Motion for ·Partial Summary Judgment, pg. 37. However, the mere reference to some "final authority" to determine eligibility or benefits does not imply discretion to construe terms. *Exbom v. Central States Health & Welfare Fund*, 900 F.2d 1138, 1141–42 (7th Cir.1990); *Ziaee*, 916 F.2d at 1206–1207, *citing, Petrilli v. Drechsel*, 910 F.2d 1441 (7th Cir. 1990). As noted in *Ziaee*, giving a plan administrator the power to decide does not imply discretion to construe. *Id., cf., Fuller*, 905 F.2d at 1058.

The Defendants' references to the cases of *DeWitt v. State Farm Ins. Co. Retirement Plan for United States Employees*, 905 F.2d 798 (4th Cir.1990) and *Pirozzi v. Blue Cross–Blue Shield of Virginia*, 741 F.Supp. 586 (E.D.Vir.1990) are curious. In *Pirozzi* the court noted that a *de novo* standard of review was appropriate because the Plan conferred no discretion on the administrator when it came to interpreting the exclusion for "experimental" procedures as opposed to "medically neces-

---

**5.** As a result of this ruling, the Court does not need to address whether the more deferential standard of review is "arbitrary and capricious" or "abuse of discretion," or whether there is even a difference between the two. *See Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688, n. 2 (7th Cir.1992); *Lister v. Stark*, 942 F.2d 1183, 1187–88 (7th Cir.1991).

**6.** This authority, which only appears in the Summary Plan Description, does not appear to be evidenced anywhere else in the Trust or Plan documents as they existed from 1985 through 1991.

sary" ones. Notably, in *Pirozzi* the Plan administrator had an express grant of discretion when interpreting the "medically necessary" language. *See Pirozzi*, 741 F.Supp. at 589, n. 5. Here, of course, like in *Pirozzi*, the term "discretion" was never mentioned, nor even implied, when it came to interpreting the "experimental" treatment term. In that regard, *Pirozzi* is consistent with the situation here and supports the adoption of a *de novo* standard of review.

As to the *DeWitt* case, the language of the Plan there is in contradistinction to the terminology applied by the Plan and Trust here. Simply stated, in *DeWitt*, the plan administrator had the power "to construe and interpret the plan." *See DeWitt*, 905 F.2d at 801. The Fourth Circuit's view that this phrase requires deferential review is in harmony with the Seventh Circuit's decision of *Fuller v. CBT, Corp.*, 905 F.2d at 1058. Critical here, is the fact that the phrase (or anything close to it) never found its way into any of the plan documents. Thus, the holding in *DeWitt* simply does not support the Defendants' position.

In sum, on this issue the Defendants' Motion for Partial Summary Judgment should be denied because the plan documents submitted to the Court clearly show as a matter of law that discretion was not conferred upon the trustees to construe and interpret the Plan or Trust, and that therefore any interpretation by them of a Plan term must be reviewed *de novo*.

All this is not to say, however, that a *de novo* standard of review is to be applied to the trustees apparent factual determination that ABMT treatment is "experimental." The United States Supreme Court has left that issue unresolved. *Halpin v. W.W. Grainger, Inc.*, 962 F.2d at 688, n. 2. The Seventh Circuit has yet to address the issue. *Id. See also Pierre v. Connecticut Gen'l Life Ins. Co.*, — U.S. —, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991) (White, J., dissenting from denial of certiorari) (*citing, Luby v. Teamsters Health, Welfare & Pen-*

*sion Trust Funds*, 944 F.2d 1176 (3rd Cir. 1991)); *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210 (4th Cir.1990); *Petrilli v. Drechsel*, 910 F.2d 1441 (7th Cir. 1990) (dicta).

However, in the final analysis this point may not become much of an issue anyway because recent cases have determined that a finding that ABMT is "experimental" cannot be sustained even under the most deferential standard of review.[7] *See Wilson v. Group Hospitalization and Medical Services, Inc.*, 791 F.Supp. 309 (D.D.C. 1992) (recognition that plans can no longer exclude ABMT as "experimental"; plans now excluding ABMT directly for all but certain listed diseases; preliminary injunction granted); *Bucci v. Blue Cross Blue Shield of Connecticut, Inc.*, 764 F.Supp. 728 (D.Conn.1991) (denial of coverage for ABMT for breast cancer patient arbitrary and capricious); *Kulakowski v. Rochester Hosp. Service, Corp.*, 779 F.Supp. 710 (W.D.N.Y.1991) (preliminary injunction granted in favor of breast cancer patient; decision that ABMT is "experimental" arbitrary and capricious); *White v. Caterpillar, Inc.*, 765 F.Supp. 1418 (W.D.Mo.1991) (ABMT sought for breast cancer patient; determination that ABMT "investigational" treatment "arbitrary and capricious"; temporary injunction granted); *Adams v. Blue Cross/Blue Shield of Maryland*, 757 F.Supp. 661 (D.Md.1991) (ABMT not "experimental" for breast cancer; decision to deny coverage overturned under either *de novo* or "arbitrary and capricious" standard); *Rollo v. Blue Cross/Blue Shield of New Jersey*, No. 90–597, 1990 WL 312647, 1990 U.S.Dist.LEXIS 5376 (D.N.J. March 22, 1990) (assuming without deciding that deferential review applies; decision to deny coverage for ABMT for Wilms tumor "arbitrary and capricious"; preliminary injunction granted); *Pirozzi v. Blue Cross–Blue Shield of Virginia*, 741 F.Supp. 586 (E.D.Va.1990) (*de novo* standard of review applied; ABMT not "experimental" for

---

7. This may be particularly true if the Defendants still have no evidence that ABMT is "experimental." *See* Court's Order of January 7, 1992, pg. 9 ("The evidence in this record is undisputed that the [ABMT] is not an experimental medical procedure, and thus, not medical treatment excluded from coverage under the plans.").

treatment of breast cancer); *Dozsa v. Crum and Forster Ins. Co.*, 716 F.Supp. 131 (D.N.J.1989) (injunction granted for patient with multiple myeloma; denial of coverage for ABMT cannot be sustained under either *de novo* or "arbitrary and capricious" standard). *But see Clark v. K–Mart Corp.*, No. 91–3723, 1992 WL 106935 1992 U.S.App.LEXIS 11543 (3rd Cir. May 22, 1992) (grant of preliminary injunction in favor of patient overturned; under "arbitrary and capricious" standard evidence supports denial of coverage for ABMT as "experimental" in breast cancer cases); *Holder v. Prudential Ins. Co.*, 951 F.2d 89 (5th Cir.1992) (trial court's determination that ABMT "experimental" in breast cancer case affirmed but noting that at the time treatment was offered to patient the procedure was more experimental, and this may no longer be true); *Sweeney v. Gerber Products Co. Medical Benefits Plan*, 728 F.Supp. 594 (D.Neb.1989) (ABMT "experimental" for breast cancer; denial of benefits upheld under "arbitrary and capricious" standard).

### CONCLUSION

The Defendants' Motion for Partial Summary Judgment is DENIED, and the Plaintiffs' Motion for Partial Summary Judgment is GRANTED.