Robert A. PERUZZI, Executor of the Estate of Gloria M. Peruzzi, Deceased, Plaintiff–Appellant,

v.

SUMMA MEDICAL PLAN, et al., Defendants–Appellees.

No. 96–4175.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1997.

Decided Feb. 27, 1998.

E. Marie Wheeler (briefed), Leonard W. Stauffenger (argued and briefed), Amer Cunningham Brennan Co., Akron, OH, for Robert A. Peruzzi.

James D. Kurek (argued and briefed), Vincent J. Tersigni (briefed), Buckingham, Doolittle & Burroughs, Akron, OH, for Summa Health Systems.

James D. Kurek,Vincent J. Tersigni, Buckingham, Doolittle & Burroughs, Akron, OH, for Summa Medical Plan.

Before: MERRITT, BATCHELDER, and FARRIS,* Circuit Judges.

## OPINION

MERRITT, Circuit Judge.

Gloria Peruzzi was diagnosed with breast cancer in October 1993 and soon thereafter underwent a radical mastectomy and lymph node dissection. Mrs. Peruzzi's doctors concluded that she needed further treatment to prevent the cancer from developing further and spreading. She underwent · standard chemotherapy and chest radiation therapy that her doctors concluded were successful. The doctors were concerned with the risk of recurrence, and they advised Mrs. Peruzzi to undergo an additional treatment consisting of high dose chemotherapy followed by bone marrow transplantation. The high doses of chemotherapy are especially toxic to the bone marrow and require an infusion of the patient's own bone marrow cells.

Mrs. Peruzzi participated in the self-insured medical benefits plan of Summa Health System, Inc., which is administered by SummaCare, Inc., a third-party fiduciary and processor of claims. The plan excludes coverage for "services and supplies that . . . are experimental or of a research nature" and provides that the plan administrator has "discretionary authority to interpret the plan" and that the administrator's decision is "final and binding." Summ. Plan Description at 25, J.A. at 98; *id.* at 46, J.A. at 119.

To obtain coverage for the high dosage chemotherapy and bone marrow transplantation procedure, Mrs. Peruzzi requested precertification from SummaCare. It determined that the procedure constituted experimental treatment and denied Mrs. Peruzzi's request for coverage. She elected to undergo the procedure nevertheless. After Summa's appeals committee denied Mrs. Peruzzi's appeal, she filed this action under § 502(a)(1)(B) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B), seeking payment of $30,000 as reimbursement for medical bills already paid and additional payments for other costs associated with the treatment. Mrs. Peruzzi was diagnosed with leukemia less than a year later and died in December 1995. Robert Peruzzi continued to pursue this action as administrator of his wife's estate. The District Court granted summary judg-

* The Honorable Jerome Farris, Circuit Judge of United States Court of Appeals for the Ninth Circuit, sitting by designation.

ment in favor of the defendants, and Mr. Peruzzi now appeals.

Peruzzi recognizes that "[w]here an ERISA plan gives the plan administrator discretionary authority to determine benefits or construe the terms of the plan, the administrator's interpretation of the Plan language is reviewed under an 'arbitrary and capricious' standard." *Wendy's Int'l, Inc. v. Karsko*, 94 F.3d 1010, 1012 (6th Cir.1996) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989)). Although Peruzzi concedes that an "arbitrary and capricious" standard is appropriate in this case, he argues that this standard is "a range, and not a point." According to him, this range "has, at one end, the disinterested and impartial decision makers receiving the greatest deference and, at the other, those fiduciaries and administrators who may favor their financial and profit-making interests over the best interests of the plan participants." Pl.'s Br. at 14. Peruzzi contends that this case warrants the application of a less-deferential version of the arbitrary and capricious standard because SummaCare operates under an inherent conflict of interest: As administrator, it interprets the plan, deciding what expenses are covered, and as issuer of the policy, it ultimately pays those expenses. The District Court correctly recognized that the conflict of interest inherent in self-funded plans does not alter the standard of review, but "should be taken into account as a factor in determining whether the . . . decision was arbitrary and capricious." *See Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 694 (6th Cir.1989).

Our review of the record satisfies us that it does not support a finding that SummaCare's denial of coverage in this case was based on the cost of Mrs. Peruzzi's treatment. Attempting to demonstrate that SummaCare's determination was motivated by cost, Peruzzi asserts that Dr. David L. Hoff, SummaCare's medical director, conferred with two members of the plan's management, including the chief financial officer, shortly before the claim was denied. The defendants concede that the appeal board which made the final determination in Mrs. Peruzzi's case included the chief operating officer and two vice presidents of Summa (along with two doctors from local hospitals). Defs.' Br. at 13; Childs Aff. at 2, J.A. at 146. They assert that the members of this panel have no financial stake in the performance of the SummaCare plan, and Peruzzi does not point to any other specific evidence tending to show that SummaCare was motivated by cost. Because our review of the record reveals no significant evidence that SummaCare based its determination on the costs associated with Mrs. Peruzzi's treatment or otherwise acted in bad faith, we cannot conclude that SummaCare was motivated by self-interest in this instance.

The term "experimental or of a research nature" is not defined in the plan or in the Summary Plan Description. Peruzzi argues that the exclusion should therefore be narrowly interpreted, but the cases he cites in support of this argument are inapposite here because none involved a plan that gave the administrator the discretion to interpret the terms of the plan. *See, e.g., Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir.1994) (interpreting the term "termination of employment" *de novo*—i.e., without deferring to either party's interpretation—only after concluding that the plan did not give the administrator discretion sufficient to warrant deference to administrator's interpretation). SummaCare interpreted the plan's experimental treatment exclusion to encompass procedures that were not of a generally accepted medical therapy or were still under investigation. SummaCare looked to the standard of care in the medical community to determine whether a given treatment was generally accepted medical therapy. The law is clear that where the plan gives the administrator discretion to interpret its terms, the administrator's interpretation must be upheld unless it is arbitrary and capricious, or "unreasonable." *Wendy's*, 94 F.3d at 1012. We are satisfied that SummaCare's interpretation of the exclusion is consistent with the plain meaning of the term "experimental or of a research nature."

In deciding whether SummaCare's application of the exclusion was arbitrary and capricious, we review only the materials pre-

sented to SummaCare and its appeals committee. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991); *Perry v. Simplicity Engineering*, 900 F.2d 963, 967 (6th Cir.1990). SummaCare based its denial of coverage on the opinion of its medical director, Dr. Hoff, who is not an oncologist, but who took some steps to learn about the treatment before making his recommendation to deny coverage. He reviewed a 1993 study done by Dr. William P. Peters, who is a respected radiation oncologist at Duke University, and a team of other specialists. J.A. at 181–92. One of Mrs. Peruzzi's physicians, Dr. Brenda Cooper, brought the Peters study to Dr. Hoff's attention in a letter regarding Mrs. Peruzzi's suitability for the treatment. Dr. Hoff concluded from the study that the procedure was experimental as applied to late-stage breast cancer patients such as Mrs. Peruzzi.

As Peruzzi points out, the Peters study concluded that high dose chemotherapy followed by reinfusion of the patient's own bone marrow cells resulted in a decreased frequency of relapse in patients with high-risk primary breast cancer. Nevertheless, the study includes a number of statements supporting the conclusion that it was experimental. It recognized the need for further randomized study before the procedure was made available on a widespread basis; it noted that the treatment carried a substantial risk of death; it observed that only time and further evaluation will allow wider use of the treatment; and, it recommended trials at major academic centers with experience in similar procedures to test the approach. In sum, the tone of the study and numerous statements contained therein support SummaCare's conclusion that the treatment was experimental for patients with advanced breast cancer at the time Mrs. Peruzzi underwent the procedure. That a procedure achieves the desired result does not preclude the conclusion that it remains at an experimental stage of development.

In addition to reviewing the Peters study, Dr. Hoff spoke to other physicians about the procedure before making his recommendation to SummaCare. He talked to Dr. Terri Koenig, an internal medicine specialist and SummaCare's associate medical director, about the Peters study. He also discussed the study's findings with Dr. Joseph Koenig, a specialist in hematology and medical oncology and the husband of Terri Koenig. Finally, Dr. Hoff presented the study's findings to the SummaCare Medical Benefits Review Committee, a panel made up of physicians, none of whom is an oncologist. Together with the Peters study, these conversations convinced Dr. Hoff that the high dosage chemotherapy and bone marrow transplant procedure was experimental in nature.

Peruzzi argues that Dr. Hoff should have consulted with more oncologists about the procedure. He offers the opinions of three oncologists involved in his wife's treatment: Dr. Brenda Cooper, Dr. Hillard Lazarus, and Dr. Paula Silverman. All three doctors said in depositions that the high dosage chemotherapy and bone marrow transplantation procedure is an appropriate, acceptable, and reasonable choice for a patient in Mrs. Peruzzi's situation. However, these depositions were taken only after SummaCare rendered its final denial. Because only the materials considered by the plan administrator in making the challenged determination may be considered on appeal, we may not consider these depositions in deciding whether SummaCare's denial of coverage was arbitrary and capricious. *See Miller*, 925 F.2d at 986; *Perry*, 900 F.2d at 967.

Peruzzi also points to correspondence submitted to SummaCare by Dr. Cooper and Dr. Kenneth Wells regarding Mrs. Peruzzi's suitability for the procedure. Review of this correspondence, which was submitted to SummaCare before its final decision, does not reveal any evidence to counter the conclusion that high dosage chemotherapy and bone marrow transplantation treatment is experimental. In her letters to SummaCare, Dr. Cooper referred to the Peters study in support of her opinion that the procedure might be superior to standard chemotherapy treatment. J.A. at 163–65, 170–71. She said that the only experimental portion of the treatment was a growth factor administered to the bone marrow cells after reinfusion, a procedure provided at no cost by a pharmaceutical company, but she offered no evidence other than the Peters study to bolster

her opinion that the remainder of the treatment was not experimental. Dr. Wells's letters merely state his concurrence in Dr. Cooper's recommendation of Mrs. Peruzzi for the treatment. These letters point to no evidence tending to call into doubt the reasonableness of SummaCare's conclusion that the high dosage chemotherapy and bone marrow transplantation procedure was experimental. J.A. at 166–67. Although Dr. Hoff and SummaCare repeatedly invited Mrs. Peruzzi and her doctors to submit further evidence tending to show that the treatment was non-experimental, they provided no significant proof. *See Miller,* 925 F.2d at 986 (in reviewing administrator's determination, court may properly consider plaintiff's failure to supply evidence requested by administrator in accordance with plan).

In support of his argument that the treatment received by his wife was not experimental, Peruzzi also refers to cases from several trial courts that have struck down benefit plan determinations denying coverage for the high dosage chemotherapy and bone marrow transplantation procedure. Pls.' Br. at 18 (citing *Helman v. Plumbers & Steamfitters Local 166 Health & Welfare Trust,* 803 F.Supp. 1407, 1413–14 (N.D.Ind. 1992) (listing other cases) and *Mashburn v. Mail Handlers Benefit Plan,* No. 3:94–0549, 1994 WL 715962, at *4 (M.D.Tenn.1994) (same)). The District Court recognized this authority but pointed to the decisions of two other federal appeals courts that have recently upheld decisions not to cover the costs of this treatment. Dist. Ct. at 16–17, J.A. at 32–33 (citing *Holder v. Prudential Ins. Co. of America,* 951 F.2d 89, 91 (5th Cir.1992) and *Fuja v. Benefit Trust Life Ins. Co.,* 18 F.3d 1405, 1411–12 (7th Cir.1994)). As the District Court stated, the proper inquiry addresses not the reasonableness of the treatment itself, but the reasonableness of SummaCare's determination that it is not covered by the plan. Dist. Ct. at 17, J.A. at 33. That courts were still upholding the denial of coverage for the procedure as experimental at the time SummaCare made its determination supports the conclusion that the decision was not arbitrary and capricious.

■ Peruzzi argues in the alternative that high dosage chemotherapy and bone marrow transplantation procedure should be covered under Summa's medical benefit plan as two independent treatments. We are doubtful that Peruzzi may properly raise this argument now because it is unclear that he presented it to the plan administrator. *See Perry,* 900 F.2d at 967. Nevertheless, we are unpersuaded that viewing Mrs. Peruzzi's treatment as two separate procedures creates a genuine issue of material fact with respect to SummaCare's determination. Even if high dosage chemotherapy involves the same drugs as standard chemotherapy, as Peruzzi asserts, it is the higher, toxic doses administered which have led to the conclusion that this treatment is experimental. *See* Peters study, J.A. at 190–91. The reinfusion of bone marrow cells is performed only to counter the effects of this toxicity. If the chemotherapy portion of the treatment is properly excluded as experimental treatment, then the bone marrow infusion it necessitates cannot be considered a "medically necessary" supply or service, as Peruzzi argues. *See* Summ. Plan Description at 17, J.A. at 90.

For the foregoing reasons, SummaCare's denial of coverage was not arbitrary and capricious under the circumstances, and the judgment of the District Court is AFFIRMED.