**Regina WAGES, Plaintiff–Appellant.**

v.

**SANDLER O'NEILL & PARTNERS, L.P., as Administrator of Sandler O'Neill & Partners, L.P., Long Term Disability Plan; Continental Casualty Company/CNA Insurance Company, a Foreign Corporation, Defendants–Appellees.**

No. 00–5994.

United States Court of Appeals, Sixth Circuit.

March 1, 2002.

---

Before NELSON, CLAY, and GARWOOD, Circuit Judges.*

NELSON, Circuit Judge.

This is an ERISA case that arises out of the denial of a claim for permanent disability benefits under an employee benefit plan. The district court dismissed the plaintiff employee's challenge to the denial of the benefits, concluding that as a matter of law the administrative record failed to show that the decision to deny benefits was arbitrary and capricious. We have reached the same conclusion upon *de novo* review of the record, and the judgment entered by the district court will therefore be affirmed.

I

The plaintiff, Regina Wages, began working for defendant Sandler O'Neill & Partners as a servicing sales coordinator in January of 1992. Sandler O'Neill provides its employees coverage under a group disability insurance policy issued by its co-defendant in this matter, Continental Casualty Company/CNA Insurance Company. The coverage qualifies as an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.* Sandler O'Neill is the designated plan administrator.

In October of 1996 the plaintiff visited her primary care physician, Dr. William F.

* The Honorable William L. Garwood, United States Circuit Judge for the Fifth Circuit, sitting by designation.

Craven, complaining of pain and fatigue. Dr. Craven referred her to Dr. Cathy M. Chapman, a rheumatologist, who examined the plaintiff for the first time on October 28, 1996. Dr. Chapman concluded that the plaintiff "very likely" had fibromyalgia, a syndrome of unknown origin that is characterized by chronic fatigue and muscle pain. The plaintiff returned to Dr. Chapman for follow-up on consultations November 27, 1996, and January 14, 1997. After the latter visit, Dr. Chapman wrote a letter to Sandler O'Neill recommending that the plaintiff be granted two months of medical leave. The plaintiff has performed no work for Sandler O'Neill since January 15, 1997, and her alleged disability is claimed to date from that point.

Between January 15 and June 26, 1997, the plaintiff saw Dr. Chapman four more times. It appears that she also had at least seven appointments with Dr. Craven. The plaintiff kept appointments with both doctors on June 26, the day she submitted her claim for permanent disability.

Upon receipt of the plaintiff's claim Sandler O'Neill referred the case to Jim Linsky, the insurance company's disability specialist. Mr. Linsky interviewed the plaintiff regarding her condition on July 3, 1997. Under the Continental policy, the plaintiff had 90 days in which to submit "written proof" of her disability. On July 12, 1997, she submitted a chronic pain questionnaire and a statement of daily activities. She supplemented this with office notes from her visits to Drs. Craven and Chapman.

On July 21, 1997, Dr. Chapman wrote a letter to the nurse case manager at Continental who was in charge of the plaintiff's claim. Dr. Chapman expressed herself in the letter as follows:

"It has been my experience that patients with fibromyalgia are convinced that they cannot return to work. This patient [the plaintiff], of note, has responded only minimally to any treatment options, which is typical. There are no objective abnormalities to justify her limitation or inability to work. I feel that in this case, disability has to be determined based on the criteria through her insurance."

The nurse case manager subsequently recommended against granting benefits. By letter dated August 21, 1997, Continental denied the plaintiff's claim.

The plaintiff sought reconsideration of the denial. In this connection Dr. Craven wrote a letter on the plaintiff's behalf detailing his reasons for believing that she had fibromyalgia. He also forwarded the results of the plaintiff's lab work to show that he had excluded other possible ailments. Dr. Craven's letter—dated October 21, 1997—noted that his examination of the plaintiff disclosed 12 of 18 possible "tender points" that are generally indicators of fibromyalgia.[1] He also stated that the plaintiff's "primary symptom" was fatigue, not pain. Dr. Craven argued that the lack of "objective abnormalities" in the plaintiff's physical examination was characteristic of patients with fibromyalgia and did not mean that she was able to perform the duties of her job.

In a letter of October 31, 1997, Continental advised the plaintiff that her claim was being forwarded to the insurer's Ap-

---

1. In 1990, the American College of Rheumatology created two criteria for the classification of fibromyalgia: A history of widespread pain and pain in 11 of 18 tender point sites on digital palpation. See F. Wolfe, H.A. Smythe, M.B. Yunus, R.M. Bennett, C. Bombardier, D.L. Goldenberg, P. Tugwell, S.M. Campbell, M. Abeles, P. Clark, et al., The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee, 33 Arthritis & Rheumatism 160–72 (1990).

peals Committee. After examining Dr. Chapman's office notes, test results and communications with Dr. Craven, in addition to the evidence provided by the plaintiff previously, the Appeals Committee decided that the decision to deny the claim was correct. The Committee so informed the plaintiff by letter dated January 23, 1998.

On March 3, 1998, the plaintiff requested an additional appeal. Although not required to do so, Continental allowed her to submit additional medical evidence. This evidence consisted of a report on the results of a battery of tests she had taken at a sleep disorder clinic on August 20, 1997; a report of a psychological examination performed by Dr. Michael Guinle on October 3, 1997; an April 15, 1998, letter from Dr. Craven; and an April 29, 1998, letter from Dr. Chapman. Dr. Craven's letter, which was quite detailed, re-emphasized that the symptoms of fibromyalgia were necessarily subjective, but said that the condition nonetheless prevented the plaintiff from performing even her "light to sedentary" job duties. Dr. Chapman's letter, while less elaborate, stated that she "[did] not feel that [the plaintiff] can do high cognitive work, even if sedentary" and that "[t]he diagnosis of fibromyalgia is the clinical diagnosis with the finding of tender points on physical examination."

After taking this newly proffered evidence into account, Continental's Appeals Committee remained of the view that the plaintiff had not demonstrated the necessary lack of functional capacity. The Committee pointed to Dr. Guinle's psychological examination as "[t]he only attempt at providing information concerning functionality" and found that report "indicate[d] a

level of capacity that should not preclude her performance at her regular occupation." The Committee denied the plaintiff's appeal for the final time in a letter dated July 15, 1998. In a letter sent three weeks later, the Committee refused to entertain additional appeals.

The plaintiff was awarded Social Security disability benefits on June 23, 1999. Soon thereafter she brought the present action in a Tennessee chancery court. The defendants removed the case to the United States District Court for the Western District of Tennessee, where in due course they moved for summary judgment. The district court granted the motion, and this appeal followed.

## II

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When a plan does confer such discretionary authority, we review benefit decisions under an "arbitrary and capricious" standard. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.1996).

In the case before us, the summary plan description explicitly states that the plan administrator and other plan fiduciaries "have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to benefits...." Before the district court granted summary judgment,[2] the parties agreed

---

2. We have said that "the concept of summary judgment is inapposite to the adjudication of an ERISA action." *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th

Cir.1998)(Gilman, J., concurring in the judgment and delivering the opinion of the court on the summary judgment issue). A number of lower courts in this circuit have according-

that the "arbitrary and capricious" standard of review was the one to be used. On appeal, the plaintiff contends for the first time that the plan language conferring discretion does not extend to decisions made by Continental. This court resolves issues not raised below only if "the proper resolution is beyond any doubt, or where injustice might otherwise result." *Enertech Electrical, Inc. v. Mahoning County Commissioners*, 85 F.3d 257, 261 (6th Cir. 1996). Since it appears that Continental qualifies as a fiduciary under the terms of ERISA in any case, see 29 U.S.C. § 1002(21)(A), we have no hesitancy about holding the plaintiff to her earlier concession that "arbitrary and capricious" review is proper.

■ The plaintiff also alleges that since Continental both funded the plan and made decisions on whether to grant benefits, it faced an impermissible conflict of interest. A conflict of interest, if present, does not "alter the standard of review." *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998), but a reviewing court is required to take the conflict into account in determining whether a decision is "arbitrary and capricious." *University Hospitals*, 202 F.3d at 846; see *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. This requirement applies, however, only where there is "significant evidence" that the insurer was motivated by self-interest. *Peruzzi*, 137 F.3d at 433. We are aware of no such evidence here. See *Perlman v. Swiss Bank Corp. Comprehensive Disabil-*

*ity Protection Plan*, 195 F.3d 975, 981 (7th Cir.1999)(noting that "it is unsound for the judiciary automatically to impute" a corporate fiduciary's short-term self-interest to the individuals making claims determinations on its behalf).

In applying the "arbitrary and capricious" standard, we must consider only the facts known to the decision-maker at the time of the decision.[3] *Yeager*, 88 F.3d at 381. And we must uphold the decision if we conclude that it was "rational in light of the plan's provisions." *Id.* In other words, a decision is not arbitrary and capricious when "it is possible to offer a reasoned explanation [for it], based on the evidence." *Killian v. Heathsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir.1998).

■ The insurance plan at issue in the case at bar provides for "total disability" benefits only when an insured employee is
  "(1) continuously unable to perform the substantial and material duties of the Insured Employee's regular occupation;
  (2) under the regular care of a licensed physician other than the Insured Employee; and
  (3) not gainfully employed in any occupation for which the Insured Employee is or becomes qualified by education, training or experience."

The policy also requires a claimant to provide Continental "written proof of loss," which leaves no room for doubt that the plaintiff bore the burden of proving that

---

ly begun treating motions for summary judgment in ERISA cases as motions for entry of judgment. See, e.g., *In re Campbell*, 116 F.Supp.2d 937, 940 (M.D.Tenn.2000), *Saravolatz v. Aetna U.S. Healthcare*, 51 F.Supp.2d 806, 808–09 (E.D.Mich.1999). As long as the district court applied the proper standard of review, however, "reliance on summary judgment standards does not warrant reversal...." *University Hospitals of Cleveland v.*

*Emerson Electric Co.*, 202 F.3d 839, 845 n. 2 (6th Cir.2000).

**3.** Notably, this excludes the residual functional capacity questionnaire completed by Dr. Chapman on August 12, 1998, nearly a month after the plaintiff's second appeal was denied. The inclusion of the questionnaire in the "administrative record" portion of the joint appendix was presumably an oversight.

she was "unable to perform the substantial and material duties" of her job. We may reverse Continental's decision only if we find it irrational in light of these provisions of the plan.

After what appears to have been a thorough examination of the administrative record, Continental concluded that Ms. Wages had not shown that she lacked the functional capacity to perform her admittedly sedentary job. Although both Dr. Craven and Dr. Chapman wrote letters indicating that her fibromyalgia precluded even the lightest work, neither doctor quantified the plaintiff's functional limitations in terms of the number of hours she could sit or stand comfortably, or the like. Even as late as June 26, 1997—the date on which the plaintiff submitted her claim for permanent disability—Dr. Chapman's office notes indicate that the plaintiff was "being followed for a relatively mild fibromyalgia type syndrome." Dr. Chapman's subsequent letter to Continental's nurse case manager failed to recommend that the company grant total disability benefits, and it implied that the plaintiff might be physically able to return to work. Dr. Guinle, who was the only doctor to timely fill out a functional capacity report, indicated that the plaintiff was mentally capable of functioning in her job.

Although we might not reach the same conclusion Continental did if we were deciding Ms. Wages' claim as a matter of first impression, the administrative record is not devoid of support for Continental's decision. The insurance company's decision was rational, in our view, and was neither arbitrary nor capricious.

Accordingly, the judgment in which the district court declined to second-guess the denial of benefits is AFFIRMED.