**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0186n.06**
**Filed: March 15, 2006**

**No. 04-2411**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BYRON PFLAUM, II, D.O., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNUM PROVIDENT CORPORATION, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: CLAY and COOK, Circuit Judges; and RICE, District Judge.[*]

COOK, Circuit Judge. Plaintiff Byron Pflaum appeals the district court's order granting Defendant-UNUM Provident's ("UNUM")[1] motion to affirm the ERISA benefits determination and denying his motion to declare void the claim representative's denial of ERISA benefits and to order reinstatement of benefits. Because UNUM's benefits determination was not arbitrary and capricious, we affirm the district court's decision.

I.

---

[*]The Honorable Walter Herbert Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

[1]UNUM Provident Corporation purchased the assets of the Paul Revere Insurance Company during the course of this litigation. In this opinion we refer to Defendant only as UNUM.

UNUM insured Pflaum, an orthopedic surgeon, under three separate policies established and maintained by Pflaum's employer, Dearborn Orthopedic Associates, P.C. ("Dearborn"). Accordingly, the policies constituted employee welfare plans governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. Two of these policies (the "Policies") provided Pflaum monthly disability income benefits in the event he became "Totally Disabled" or "Residually Disabled" and additionally provided a "Recovery" benefit covering lost income for a period  following a disability.[2]

On February 22, 2001, Pflaum suffered a mild heart attack that hospitalized him for three days.  He was released to the care of Dr. Antonio DeLara, his family physician, and Dr. Chamen Sohol, his cardiologist, and was able to return to part-time work on March 12, 2001, but was not permitted "to do surgery" or "return to full-time work for at least six months."  Pflaum submitted a claim for benefits claiming that he was disabled from February 23, 2001, to March 12, 2001, and residually disabled beginning March 13, 2001.

UNUM paid benefits through September 1, 2001, even though it had yet to complete its claim-evaluation process.  In a letter sent with the payments, UNUM alerted Pflaum that it was tendering benefits "exceptionally and in good faith" and that UNUM "reserve[d] [its] rights as afforded by the contracts."  During this time UNUM continued to collect and analyze Pflaum's

---

[2]The professional corporation, Dearborn, was the beneficiary under the third policy, a business overhead expense policy, and is not a party to this action.

records, including the results of two stress tests, one of which Dr. DeLara conducted—revealing no significant problems—and the results of a myocardial scan performed by Dr. DeLara, also showing no problems.

In October, Dr. Oscar Starobin, a board-certified cardiologist employed by UNUM, reviewed Pflaum's medical records and issued a written report concluding that "[t]he restrictions and limitations claimed by the insured and by his personal physician do not seem to be supported by the medical records." Two weeks later UNUM informed Pflaum in writing that he no longer qualified for Total Disability benefits and advised Pflaum of his right to appeal that determination.

In December, Pflaum contacted UNUM asking how to appeal the decision and how to submit a claim for Residual Disability. UNUM provided the requested information and over the next few months Pflaum provided much of the necessary medical and financial records to UNUM, including another report from Dr. DeLara, dated March 14, 2002, remarking that "patient is able to return to work full time with NO limitations or restrictions." (Emphasis in original.) In April, Dr. Starobin again reviewed Pflaum's file and concluded, "there is no significant impairment." UNUM then denied Pflaum's claim for Residual Disability benefits.

Pflaum responded by requesting his claim be considered as one for "Recovery" benefits.[3]

Through September 2002, UNUM sent Pflaum checks representing Recovery benefits and Pflaum

continued to provide updated financial records as requested by UNUM. In November 2002, after

reviewing Pflaum's most recent information, UNUM questioned why Pflaum was still claiming a

loss of income despite returning to full-time work several months earlier. Acting on these concerns,

UNUM specifically requested that Pflaum provide his "CPT codes from January 1, 2001 through

the present" and "copies of [his] appointment books from August 2000 . . . through the present" for

review.

Pflaum responded by sending a letter appealing UNUM's denials of Total and Residual

Disability benefits. On July 2, 2003, UNUM denied Pflaum's appeal and informed Pflaum that he

would not be entitled to further Recovery benefits unless he submitted the requested documents (*i.e.*,

CPT codes and the appointment books) within 30 days. Pflaum never supplied all of the requested

information and instead filed suit.

In the district court UNUM moved to affirm the ERISA benefits determination and Pflaum

moved to declare void the claim representative's denial and to order reinstatement of his benefits.

The district court granted UNUM's motion and denied Pflaum's. Pflaum then filed this appeal

arguing the district court erred by failing to account for UNUM's conflict of interest in the decision-

---

[3]The district court characterized Pflaum's response as a request to be considered for Recovery benefits. Pflaum, in his brief, claims he requested an internal appeal. In any event, Pflaum's response was treated as a request for Recovery benefits.

making process and by upholding the denial of benefits.[4] For the reasons that follow, we affirm the

district court.

## II.

This court reviews de novo the district court's ruling, applying the same legal standard as

the district court. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).

Where a disability insurance plan grants its administrator discretion to determine benefit eligibility,

a reviewing court applies the arbitrary and capricious standard of review. *Williams v. Int'l Paper

Co.*, 227 F.3d 706, 711 (6th Cir. 2000) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,

110-12 (1989)). Under this standard, we will uphold a benefits determination if it is "rational in

light of the plan's provisions." *Williams,* 227 F.3d at 712 (quotation omitted). Put another way,

"when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome,

that outcome is not arbitrary or capricious." *Id.* (quotation omitted).

Here, the parties agree that the Policies' language providing that benefits are payable only

when the insured provides "satisfactory written proof of loss" grants UNUM discretionary authority

to determine eligibility for benefits. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 (6th Cir.

1998) (en banc) (stating that the right to require "satisfactory evidence" means that the insurer has

discretion to make benefits determinations). Yet Pflaum argues for a "less deferential, modified

---

[4]On appeal, Pflaum only challenges the denial of Recovery benefits; thus, we do not review
UNUM's decision to deny Pflaum's claims for Total Disability or Residual Disability benefits.

arbitrary and capricious standard," because UNUM, as both the insurer and plan administrator, operated under a conflict of interest. We disagree. In *Peruzzi v. Summa Med. Plan*, this court held that the "conflict of interest inherent in self-funded plans *does not alter the standard of review*, but 'should be taken into account as a factor in determining whether the . . . decision was arbitrary and capricious.'" 137 F.3d 431, 433 (6th Cir. 1998) (quoting *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 694 (6th Cir. 1989)) (alteration in original) (emphasis added).

It is now settled that "'there is an actual, readily apparent conflict . . ., not a mere potential for one,' when the company or plan administrator is the insurer that ultimately pays the benefits." *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 299 (6th Cir. 2005) (alteration in original) (quoting *Killian v. Healthsource Provident Adm'rs,* 152 F.3d 514, 521 (6th Cir. 1998). But if the conflict of interest did not actually motivate UNUM's decision, then it is given no weight as a factor in determining whether the decision was arbitrary and capricious. *See Hockin v. Kmart Corp. Long Term Disability Income Plan*, 105 Fed. Appx. 755, 757 (6th Cir. 2004) ("[W]here a 'review of the record reveals no significant evidence that [the administrator] based its determination on the costs associated with [the claimant's] treatment or otherwise acted in bad faith, we cannot conclude that [the administrator] was motivated by self-interest.'") (third alteration in original) (citing *Peruzzi*, 137 F.3d at 433). After reviewing the evidence, we conclude that Pflaum failed to demonstrate that the conflict of interest motivated UNUM to deny Pflaum's claim for Recovery benefits.

Pflaum's arguments focus mostly on establishing that a conflict existed. To the extent he claims the conflict motivated UNUM's decision, his arguments are: 1) UNUM could have had him

undergo an independent exam, but did not because it was to UNUM's financial advantage to rely on its own "staff-expert" who would reject Pflaum's disability claim; and 2) UNUM failed to contact his treating physician to clarify his condition, again, because it was to UNUM's financial advantage not to do so. In response, UNUM points out that Pflaum's own physician's statement that Pflaum had no restrictions on returning to his occupation obviated the need for additional examinations. UNUM also points out that because there was no ambiguity in Pflaum's doctor's statement—"<u>NO</u> limitations or restrictions"—no purpose could have been served by attempting to clarify Pflaum's condition. Furthermore, although UNUM employed Dr. Starobin, UNUM urges that this fact alone does not establish that his recommendations were motivated by a conflict of interest, especially considering Dr. Starobin "merely echoed" Pflaum's own doctor's opinion. Finally, UNUM stresses that it continued to pay benefits "on an exceptional basis" while it reviewed Pflaum's claim, and then did not seek to recover any payments after concluding that he was not disabled. As UNUM argues, this "belies any accusation that UNUM was motivated by a financial conflict of interest."

Because Pflaum points to nothing beyond the mere existence of a conflict of interest to show that UNUM's decision was motivated by self-interest, we give no further consideration in the arbitrary and capricious analysis to the possibility that the conflict affected UNUM's decision-making.

III.

Policy Section 2.3 provides that UNUM will "pay a Recovery benefit during [Pflaum's] Recovery" and "Recovery" is defined in Section 1.12 as:

[A] period which begins prior to age 65 during which:

a.     You incur a Loss of Earnings which follows Total or Residual Disability which continued at least to the Commencement Date; and

b.     The Loss of Earnings *is due to the prior Injury or Sickness* which caused the Total or Residual Disability; and

c.     You are working full time in Your Occupation. "Full time" means at least as many hours as You were working before Your Disability began.

(emphasis added). It is the second element of the definition that lies at the heart of this appeal.

Pflaum claims an entitlement to Recovery benefits because the Policies do not require proof of ongoing disability; they merely require proof of ongoing loss of income following a disabling period. Pflaum believes he has met this test because he still has not returned to the level of income he had seen over the past five years.

Pflaum's argument falls short because he wrongly states the requirements. As emphasized by UNUM, Recovery benefits are payable only if the loss of income is *caused by* the injury or sickness that resulted in a period of disability. Establishing only a loss of earnings is insufficient. When UNUM began to question the propriety of paying continued Recovery benefits to Pflaum in November 2002, the evidence in the administrative record, as provided by Pflaum's personal physician and UNUM's in-house cardiologist, established that since at least March 2002, Pflaum had "NO limitations or restrictions" on his ability to work full-time. UNUM, accordingly, requested

two specific sets of documents—CPT Codes and appointment books—to determine why Pflaum was still reporting a loss of income, and to determine if Pflaum was working full time (as required by the Policies). Pflaum failed to comply fully with this request.

Because the evidence showed that Pflaum's heart problems no longer limited his ability to work and because Pflaum did not provide the requested documentation to enable UNUM to fully evaluate his claim, UNUM reasonably believed that the loss of income was due to some other cause. In light of the Policy's requirements that Pflaum "provide satisfactory written proof of loss" and that the loss of earnings be due to the prior injury or sickness, UNUM's decision to deny Recovery benefits was rational, and accordingly, not arbitrary and capricious.

IV.

For the foregoing reasons we affirm the district court.