Linda S. BENNETT,

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, et al.**

No. 1:02–CV–319.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Feb. 26, 2004.

Eric L. Buchanan, Eric Buchanan & Associates, PLLC, Karen K. Wilson, Chattanooga, TN, for Plaintiff.

Phillip A. Fleissner, Fleissner Firm, Chattanooga, TN, Katharine R. Cloud, Salvador M. Hernandez, Steven A. Riley, Bowen Riley Warnock & Jacobson, PLC, Nashville, TN, for Defendants.

### MEMORANDUM AND ORDER

CARTER, United States Magistrate Judge.

#### I. Introduction

Plaintiff has brought this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), seeking review of defendant's termination of long term disability benefits which were being paid under a policy issued and funded by the Unum Life Insurance Co. (Unum) and administered by Unum's parent company, UnumProvident Corporation (UnumProvident). The plaintiff has filed a Motion to Compel seeking discovery regarding alleged conflicts of interest, bias, and procedural irregularities on the part of the defendant which the plaintiff contends deprived her of a fair assessment of her claim for long term disability benefits (Court File No. 14). The defendant seeks a Protective Order prohibiting plaintiff's discovery (Court File No. 12).

A hearing was held before the undersigned on Tuesday, January 20, 2004, on the parties' respective motions. Attorney Eric Buchanan for the plaintiff and Attorney Phil Fleissner for the defendant participated. During the hearing, the undersigned made no final ruling upon the parties' motions. Instead, the plaintiff agreed to narrow her discovery requests further and to resubmit them to Unum in an effort to resolve some of the issues raised by the parties' motions. Plaintiff has done so, but the discovery dispute remains. The plaintiff asserts she is entitled to discovery on two grounds: first, the discovery concerns conflicts of interest, bias, and denial of due process, and second, she is entitled to some of the requested discovery pursuant to federal regulation. I shall address these arguments in turn.

#### II. Discovery of Conflicts of Interest, Bias, and Procedural Due Process Violations

Once again, the undersigned is faced with the difficult question of whether to allow limited discovery in a case alleging wrongful denial of long term disability benefits under ERISA. For the reasons set forth below, the undersigned finds that carefully limited discovery in this case is warranted and will allow the plaintiff to go forward with such discovery.

#### A. Scope of Permissible Discovery

The plaintiff seeks information from the defendant outside the administrative record in her case in an effort to show bias, conflicts of interest, and denial of due process on the part of Unum which allegedly affected Unum's ability to fairly and accurately evaluate her claim for disability benefits.

■ Generally, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* In actions filed under ERISA seeking review of a denial of benefits, however, the usual discovery parameters do not apply. In such cases, a court's review of a decision to deny benefits under a qualified employee welfare benefits plan is limited generally to the administrative record upon which the decision below was based. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101,

109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845 n. 1 (6th Cir.2000); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir.1998). "The only exception to the above principle of not receiving new evidence at the district court level arises when consideration of the evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins*, 150 F.3d at 618. Where the administrator or fiduciary is given discretionary authority to determine eligibility for benefits, as is Unum though UnumProvident in this case, the administrator's or fiduciary's decision to deny benefits is reviewed by the court under an arbitrary and capricious standard. *Bruch*, 489 U.S. at 115, 109 S.Ct. 948; *University Hosps. of Cleveland*, 202 F.3d at 845; *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998). Bias, conflicts of interest, and denial of due process on the part of the plan administrator are relevant factors for the court to consider in deciding whether the decision to deny plaintiff benefits was arbitrary and capricious. *Bruch*, 489 U.S. at 115, 109 S.Ct. 948; *University Hosps. of Cleveland* 202 F.3d at 846; *Peruzzi*, 137 F.3d at 433; *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 521–522 (6th Cir.1998).

In *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir.1998), the district court granted defendant summary judgment on the plaintiff's claim that he was entitled to ERISA disability benefits under an insurance plan as a result of a disabling shoulder injury. The plaintiff/appellant asserted the district court had erroneously refused to consider a doctor's affidavit describing the doctor's impressions of an MRI of his shoulder. Writing for the majority of the three judge panel, Judge Cole held that the district court had properly excluded this additional medical evidence because it was submitted after the plan administrator's final decision denying benefits and was, therefore, not part of the administrative record. *Id.* at 615. The Court, through Judge Cole, then reviewed the administrative record and held the plan administrator had not erred in denying benefits and affirmed the judgment of the district court. *Id.* at 613–14.

Judge Gilman wrote a separate concurring opinion in *Wilkins* joined by Judge Ryan which constitutes the majority opinion of the court for purposes of the matters addressed therein. *See Wages v. Sandler O'Neill & Partners, L.P.*, 2002 WL 339221 *3 n. 2 (6th Cir.2002). Judge Gilman stated that the only exception to considering evidence outside the administrative record arises where evidence is offered in support of a procedural challenge to an administrator's decision, such as an alleged lack of due process or bias on the part of the administrator. *Id.* at 618 and 619.

The Sixth Circuit has affirmed decisions by district courts not to consider additional *medical* evidence outside the administrative record where such evidence has been offered on the substantive merits of the plaintiff's ERISA claim. *See e.g., Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 434–35 (6th Cir.1998) (district court properly refused to consider doctors' depositions on proper chemotherapy dosage where such depositions were not part of the administrative record). Conversely, the Sixth Circuit has allowed consideration of additional medical evidence outside the record where it was determined from the administrative record that the administrator denied the plaintiff due process. *See e.g., Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514 (6th Cir.1998) (where company applied the wrong procedural rules to the plaintiff's request for

pre-approval of medical treatment and rejected information from the plaintiff on the treatment's efficacy while continuing to gather information on its own, plaintiff was entitled to submit additional medical evidence for consideration). Unfortunately, I have been unable to find any Sixth Circuit decision which has actually dealt with the issue of whether to consider evidence outside the administrative record of a conflict of interest, bias, or a denial of due process on the part of the plan administrator. Both plaintiff and Unum have, however, submitted a recent unpublished district court decision to support their respective positions.

Unum relies on *Wilson v. Unum Life Insurance Co. of America,* No. 3:03–0070, slip op. at 4 ( M.D. Tenn. Jan. 22, 2004), in support of its argument that discovery is inappropriate. In *Wilson,* the court held the plaintiff could not conduct discovery into the manner in which the defendant compiled the administrative record, the processes and procedures utilized by the defendant in considering her claim, and the premium and financial arrangements between her former employer and the defendant simply because the defendant is both the administrator and the payor of benefits for the plaintiff's long term disability plan. The court reasoned that when the defendant is both an administrator and payor for a disability plan, a rebuttable presumption arises that a conflict of interest exists and, therefore, there is no need for discovery to establish it. *Id.* The *Wilson* plaintiff also sought the aforementioned discovery on the ground that the defendant had refused to consider certain medical evidence which she submitted during the appeals process. The court stated that "[s]uch an allegation of a procedural error could support a request for discovery outside of the administrative record, but not in this case." *Id.* at 5. The *Wilson* court refused to permit discovery because "the requested discovery is not tailored

toward the goal of remedying Defendant's alleged procedural error of failing or refusing to consider certain additional information submitted by plaintiff in support of her claim." *Id.* This case does not set forth a bright line rule prohibiting discovery in all ERISA cases, but clearly the mere fact that the insurance company both administers and funds the ERISA plan was insufficient for the court to find discovery permissible.

Plaintiff relies on *West Tennessee Bone & Joint Clinic, P.C. v. The Paul Revere Insurance Company,* 01–1312–T, slip op. (W.D.Tenn. Oct. 21, 2003) to support its argument that discovery is appropriate. In a very brief opinion, the court in *West Tennessee Bone & Joint Clinic* allowed the plaintiff, who had brought a claim against the defendants under ERISA, to conduct discovery concerning conflict of interest and neutrality and competency of those involved in the claims process; claims procedures; and the completeness and accuracy of the administrative record. In so doing, the court relied upon other decisions in other jurisdictions which have permitted similar discovery in ERISA cases. If read broadly, this case appears to hold that discovery into potential conflicts of interest and procedural deficiencies is permissible in *all* ERISA cases.

While I have found no published opinion within the Sixth Circuit which deals directly with the issue of discovery outside the record of procedural challenges, numerous trial courts within the Sixth Circuit have acknowledged *Wilkin's* language permitting the consideration of outside evidence on procedural challenges. None have disagreed with it and many seem to regard it as the law in the Sixth Circuit on the subject. *See e.g., Waters v. Pension Benefit Guar. Corp.,* 2002 WL 1775262, \*1 (E.D.Tenn.2002) (Collier, J.) ("The district court may consider evidence

outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision," quoting *Wilkins); Parker v. Union Planters Corp.*, 203 F.Supp.2d 888, 895 (W.D.Tenn.2002) (stating in reliance on *Wilkins,* the court "may not admit or consider evidence not presented to the administrator, except where there is a procedural challenge to the administrator's decision"); *Brooks v. General Motors Corp.*, 203 F.Supp.2d 818, 823 (E.D.Mich. 2002) (stating in reliance on *Wilkins,* "[i]f a procedural challenge is alleged, such as lack of due process afforded by the administrator or bias on its part, only then may the district court consider evidence outside the administrative record"); *Heffernan v. UNUM Life Ins. Co. of America,* 2001 WL 1842465, *2 (S.D.Ohio 2001) (stating in reliance on *Wilkins* that "[t]he Court may consider documents not before the administrator only to the extent that they bear on procedural issues"); *Serbin v. Fortis Benefits Ins. Co.*, 79 F.Supp.2d 864, 867 n. 1 (N.D.Ohio 2000) ("The *Wilkins* court did indicate that a court may consider evidence outside of the administrative record when that evidence 'is offered in support of a procedural challenge to the administrator's decision...'"); *Monks v. Keystone Powdered Metal Co.,* 78 F.Supp.2d 647, 649 n. 2 (E.D.Mich. 2000) (stating in reliance on *Wilkins* that a court could consider evidence outside the administrative record only if it has "bearing on a procedural challenge to the administrator's decision"); *Syska v. NCR Corp.*, 1999 WL 33117267 * 4 n. 3 (S.D.Ohio 1999) (stating in reliance on *Wilkins* that the only exception to limiting review to the administrative record is where consideration of other evidence is necessary to resolve a claimant's procedural challenge to the administrator's decision).

The case law in the Sixth Circuit clearly indicates that consideration of evidence outside the record of conflicts of interest, bias, and denial of due process is appropriate in certain circumstances. Unfortunately, no case clearly delineates the circumstances in which such evidence is appropriate. For guidance in this area, the undersigned finds it helpful to consider the policy interests at issue in the parties' motions.

██ There are two competing interests raised by the parties' motions. The policy rationale for constraining a court's review to the administrative record was articulated by the Sixth Circuit in *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir.1990): "A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal." (Internal citation omitted). At the same time, "ERISA was enacted to promote the interests of employees and their beneficiaries in employment benefit plans and to protect their contractually defined benefits." *Bruch,* 489 U.S. at 113, 109 S.Ct. 948 (internal citation omitted). In this regard, courts have the duty to review decisions denying ERISA benefits for conflicts of interest, bias, and denial of due process, *i.e.* procedural irregularities, on the part of the plan administrator or fiduciary. "Courts should be particularly vigilant in situations where ... the plan sponsor bears all or most of the risk of paying claims, and also appoints the body designated as the final arbiter of such claims. Under these circumstances, the potential for self-interested decision-making is evident." *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 n. 4 (6th Cir.2000). A rule requiring courts to ignore evidence of serious procedural ir-

regularities solely because they are not apparent on the face of the record seems extreme and would unduly tie the courts' hands in conducting its duties under ERISA. Furthermore, it would seriously undermine the public's confidence in the Court's fairness when reviewing actions filed under ERISA. Nevertheless, mindful of the goal to expeditiously and inexpensively resolve disputes over ERISA benefits, I do not suggest a claimant is entitled to discovery on the sole ground that the decision maker of plaintiff's claim is also the payor of benefits. In *Wilkins*, Judge Gilman, writing for the majority, stated:

> The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

*Wilkins*, 150 F.3d 609, 619 (6th Cir.1998). This language implies a claimant must identify the specific procedural challenge(s) about which he complains and that discovery must then be limited to those procedural challenges.[1] *See Schey v. Unum Life Ins. Co. of North America*, 145 F.Supp.2d 919, 924–25 (N.D.Ohio 2001) (holding sole fact that administrator/decision maker is also payor does not entitle plaintiff to discovery; pursuant to *Wilkins*, plaintiff must first identify specific procedural challenges before discovery as to those alleged procedural deficiencies will be permitted); *see also* Fed.R.Civ.P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action")

Because the Supreme Court has held that a conflict of interest on the part of a plan administrator is a relevant factor for a court to consider when reviewing an administrator's decision to deny benefits, *Bruch*, 489 U.S. at 115, 109 S.Ct. 948, it stands to reason that discovery of specifically identified conflicts of interest, bias, and/or denial of due process on the part of the administrator is permissible where a claimant can show good cause to believe such procedural challenges may exist.

██ Notwithstanding the relevancy of conflicts of interest in judicial review of ERISA claims, the defendant argues that discovery regarding this issue is not necessary in cases where the insurance company both funds, *i.e.* is the payor, and administers the plan because the courts already take notice of such a conflict of interest and give it due consideration when reviewing the denial or termination of ERISA benefits. The undersigned has no quarrel with the defendant's argument where there is no reasonable basis to support a belief that the conflict of interest goes any deeper than the dual roles held by the insurance company. This approach is simply recognition of human frailty and the general tendency, often unintentional, to be subtly influenced in such a way as to act in one's own best interest at the expense of another. Where, however, an ERISA plaintiff comes forward with a reasonable basis to believe that this conflict of interest has solidified into conscious, concrete policies, procedures, and practices to promote the company's financial welfare at the expense of a full and fair evaluation of the plaintiff's claim for benefits, then the plaintiff should be allowed to conduct limited discovery to determine whether such policies, procedures, and practices do actu-

---

1. I use the term "procedural challenges" like Judge Gilman in *Wilkins* did to include bias or conflict of interest on the part of the claims administrator or fiduciary as well as a denial of due process.

ally exist and, if so, to what extent they interfered with the fair review of the plaintiff's claim for benefits. This information would certainly be relevant to the Court when conducting its review of the decision to deny benefits.

■ In light of the authority discussed herein and in recognition of the competing interests at issue, I conclude a "middle of the road" approach is appropriate, neither prohibiting nor permitting discovery in ERISA cases simply because the fiduciary holds dual, conflicting roles. Rather, where a claimant 1) identifies specific procedural challenges concerning a fiduciary's decision to deny or terminate ERISA benefits, and 2) makes an initial showing to the court that he has a reasonable basis to make such procedural challenges, then good cause exists to permit the plaintiff to conduct appropriate discovery. Appropriate discovery is discovery that is strictly circumscribed to obtain potential evidence concerning the identified procedural challenges. Under these circumstances, discovery which requests the administrator or fiduciary to rehash the medical reasons for its denial of the plaintiff's claim is not appropriate.

### B. Application to this Case

#### 1. Evidence Produced by the Plaintiff to Justify Limited Discovery

■ Plaintiff received long term disability benefits under a policy issued by Unum until the plaintiff was notified by letter dated July 2, 2001, that Unum no longer considered her disabled under the policy. Based on the documents in the administrative record filed with the Court, it is clear the decision to terminate benefits was made after a review of plaintiff's claim conducted by UnumProvident in its Chattanooga, Tennessee offices. The plaintiff's appeal of her termination of benefits was also reviewed and denied by UnumProvident in its Chattanooga offices.

(*See* Admin. Record, Doc. Nos. UACL00245–248, UACL00251–254, UACL00258–259, UACL00275–277, UACL00368–379). Unum is a subsidiary of UnumProvident, and, as such, Unum's financial status directly affects UnumProvident's financial status.

Plaintiff has raised serious and specific procedural challenges to Unum's/UnumProvident's policies and practices in reviewing claims which reach far deeper than the sole fact that Unum/UnumProvident both administers and funds the plan at issue. Plaintiff has also come forward with evidence as to these challenges in the form of two former employee's depositions and one former employee's sworn statement as well as a number of internal UnumProvident documents generated by UnumProvident executives.

One of the deponents is Dr. Patrick Fergal McSharry, who was employed for approximately two years beginning in late 2000, as a medical advisor for UnumProvident at its disability claims unit in Chattanooga. The other deponent is Dr. William Feist, Chief Medical Officer for Provident Life Insurance Company, a predecessor company to UnumProvident, in Chattanooga from 1982 to 1996. Donna Wright, a claims handler for UnumProvident in Chattanooga from June 1998 to October 2001, gave her sworn statement.

Dr. McSharry testified in his deposition to the following: he is familiar with UnumProvident's unwritten corporate policies and practices in reviewing claims for disability benefits. UnumProvident has a company-wide practice of denying claims based on UnumProvident's current profits. Claims managers and handlers are given a quota of how many claims need to be "closed," *i.e.* denied, in a given period for the company to remain at a certain level of profitability. Medical advisors such as McSharry are offered bonuses at

a level of 25% base pay determined, in part, on company earnings. Medical advisors are also eligible to participate in stock option grants with the company upon management's recommendation and the Compensation Committee's approval. Claims handlers, his supervisor, and even other doctors employed by UnumProvident pressured McSharry to agree with claims handlers to deny claims. When he did not agree with the claims handlers, his supervisor told him he was not part of the team and he was falling off the career path. UnumProvident's procedures for reviewing claims were sometimes intentionally inadequate, preventing a full and fair review, in order to facilitate easier denial of disability claims. For example, the company had a procedure called a "walk-in" where the claims handler would come to his office without the claimant's medical records and ask a few leading questions, then use his answers to deny the claim when McSharry had not fully reviewed the claimant's medical records. He also attended "mini-roundtable" meetings in which claims handlers and claims managers discussed the reserve amounts for specific claims and the need to free up a certain amount of reserves by "closing" a certain number of claims. He was also discouraged by his supervisor from asking for additional medical records if he thought the medical file was incomplete. His supervisor, the medical director, told McSharry that the medical advisors have no role unless they keep the business partners, *i.e.* the claims handlers, totally happy. Dr. McSharry also testified that there were occasions in which he gave an opinion that the claims handler did not like so the claims handler would ignore his opinion and find another doctor who would provide an opinion more supportive of the claims handler's decision to deny benefits.

Dr. Feist testified that the company's manner of handling claims changed in the mid-1990's when a new Chief Operating Officer and Claims Manager were hired. "Roundtables" were used to target ongoing claims with high reserves in order to save the company money. Claims adjusters were looked upon favorably if they brought claims to the roundtable meetings, and notes taken at roundtable meetings were destroyed. He also testified that he was told by the Claims Manager not to write on a file that any person is disabled because the claims department was to make that decision. He further testified that the company adopted a policy to ignore the claimant's own physician, to use independent medical examiners to obtain favorable opinions, and to disregard unfavorable information.

Donna Wright gave her sworn statement testifying to the following: claims handlers were specifically forbidden from printing off the computer and from placing in the claimant's file information from manuals on how to handle a claim, e-mails concerning a claim, and guidelines as to state law applicable to a claim. The reason for this prohibition was to make a decision to deny benefits more easily defensible. Employees were written up if they did print out hard copies of the manual. Claims reserves for each claim were always available on the computer to the claims handler. She also testified that when Provident Life Insurance Co. (Provident) merged with Unum in 1996, Wright's supervisor told her not to pay claims beyond certain standardized medical guidelines, regardless of the complexity of the claimant's condition, because "we needed to save money" (Wright's sworn statement at 23).

The plaintiff has also submitted copies of a number of internally generated memoranda from UnumProvident and Provident executives which appear to support the plaintiff's claim that one of UnumProvi-

dent's corporate goals was to terminate as many ongoing claims and deny as many new claims as possible in order to save the company millions of dollars. The following excerpts illustrate the tone and general import of these memoranda:

> The product management group has determined that our claim terminations have been running at a lower level over the past two years than in earlier periods. This could result from a number of factors, including a different claimant profile, i.e., physicians and lawyers, where the claims are tougher to close; however, we will intensify the efforts to review termination potential. We have instituted special review sessions to review in a cross-functional manner all LTD claims over $200,000 of reserve. Not only will the relevant LTD claim personnel be participants, but they will be assisted by an individual claim consultant at every meeting.

("Monthly Risk Management Report," dated September 17, 1996, from Tom Heys to Harold Chandler, plaintiff's memorandum of law in support of plaintiff's motion to compel, Exhibit 13, PROV 02152).

> Overall, we are both pleased and encouraged with the net results of the claim management activities during the quarter. The $114.8 million of net terminations (terminations minus re-opens) represents a record level and is 28% ahead of the previous four quarter average. Moreover, the fourth quarter represents the 3rd consecutive quarter of $100 million or more net terminations. In addition to enhanced claim management results, the seasonally lower new claims combined to produce the very strong overall financial results.

("Provident Internal Memorandum," dated January 17, 1995, from Tom Heys to Ralph Mahoney, Plaintiff's memorandum, Ex. 43, PROV 02422).

Several of the documents referred to "roundtable" review sessions of selected claims representing a specified amount of dollars in reserve. For example, one document attached to an April 17, 1996, memorandum states, "Roundtable review sessions continued with an additional 43 claims representing $20 million in reserves reviewed in March. Appropriate actions were agreed upon and are being implemented" (plaintiff's memorandum, Ex. 46, Bates # 02468; *see also* Ex. 13, PROV 02152; Ex. 112, PRL 003198; Ex. 114 PRL 00321).

A number of other internal Provident/UnumProvident documents appear to support the allegations that defendant engaged in a practice of destroying certain written information which may be pertinent to the manner in which specific claims were evaluated. For example, a document entitled " Outline for Information Management Presented by the Law Department of Provident Life & Accident Insurance Co.," states in part, "when finished with a project, destroy temporary drafts, reminder notes, worksheets, personal memos, duplicate copies, and the like" (plaintiff's memorandum, Ex. 64, GSCONF 3921).

The plaintiff has also submitted a copy of an order entered by the Georgia Commissioner of Insurance in the case of *In the Matter of Unum Life Insurance Company of America,* No.2002C–28 (March 19, 2003), in which Unum, The Paul Revere Life Insurance Company, Provident Life and Accident Insurance Company, and Provident Life and Casualty Company were placed on probation for two years and each ordered to pay a $250,000 penalty for "certain issues associated with the handling of claims, complaint resolution, and record maintenance" revealed during an investigation conducted for the period January 1, 1999, through November 30, 2000. The order sets forth specific terms con-

cerning how claims were to be reviewed and records maintained and is signed as "[c]onsented to by" J. Harold Chandler as "Chairman, President and CEO" for each of the four companies (*See* Order attached to plaintiff's memorandum).

I understand the allegations that Unum-Provident and/or any of its subsidiaries or related companies has engaged in wrong-doing when evaluating new or ongoing claims are hotly disputed, and I offer no opinion whatsoever as to the veracity of these allegations. However, the ultimate credibility and/or interpretation of plaintiff's evidence is not the issue in this phase of the litigation. Through the evidence presented with her motion to compel, the plaintiff has shown she is not simply seeking to conduct a fishing expedition. She has made a threshold showing that Unum-Provident's decision to terminate disability benefits during the time plaintiff's benefits were terminated may have been influenced, on a corporate-wide scale, by UnumProvident's own financial bottom line rather than the claimants' medical conditions and that UnumProvident had specific policies, procedures, and practices in place to promote its best interests at the expense of the claimants.[2] Consequently, just cause exists to allow appropriate discovery. In this regard, the undersigned will require all discovery requests to be strictly circumscribed to discover evidence of bias, conflict of interests, and denial of

due process akin to those identified by the plaintiff in the evidence submitted to the undersigned.

### 2. The Specific Discovery Sought by the Plaintiff

■ After parring down the original discovery served on Unum, the plaintiff has submitted nine interrogatories, eleven requests to produce, and eight requests for admission to Unum.[3] The undersigned will not compel the defendant to respond to the requests to admit. Discovery is to be strictly limited to obtain information about specifically alleged and identified procedural challenges. The interrogatories and requests to produce accomplish this goal, and the requests to admit are duplicative and serve more as a vehicle to "pin down" the defendant as to certain issues rather than purely to discover information. The interrogatories submitted appear to be appropriately narrow to elicit information concerning the alleged conflicts of interest and denial of due process identified by the plaintiff in her motion to compel, except for interrogatory No.18. Interrogatory No.18 asks the defendant to state the basis for its denial if the defendant denies any of the plaintiff's requests to admit. This interrogatory is irrelevant since the defendant will not be compelled to answer the requests to admit. The undersigned finds the eleven requests to produce appropriate except for request to produce No. 15. No.

---

2. For example, in the administrative record in this case, there is a UnumProvident document entitled "Detail Activity Listing," which contains a note dated April 5, 2000, stating, "legal roundtable should also be considered..." (Administrative Record, Doc. # UACL00435). The plaintiff should be able to inquire into whether her claim was "roundtabled" and, if so, what occurred at this roundtable meeting. She should also be able to receive answers to her questions about this matter under oath from the defendant. The administrative record also indicates that the defendant relied heavily upon its own medical advisor's opin-

ion in terminating her benefits. The plaintiff should be able to determine if the medical advisor was paid in such a way that the medical advisor might have had personal incentive to prepare her report in a certain way.

3. The interrogatories are Nos. 1, 2, 4, 5, 10, 13, 16, 18, and 20 of the original set of interrogatories. The requests to produce are request Nos. 1, 2, 5, 6, 7, 8, 12, 13, 14, 15, and 16 of the original set of requests to produce.. The requests for admission are request Nos. 2, 3, 4, 5, 7, 9, 12, and 13 of the original set of requests to admit.

15 requests "[a]ny and all documents that show or describe in any way the relationship between UnumProvident and the Unum Life Insurance Company of America." This request is overly broad as there could be any number of documents which might "show" "in any way" the relationship between the two companies. If the plaintiff wants documents which evince the legal relationship between the two companies, the plaintiff must appropriately narrow the request to ask for such documents.

The undersigned is not unmindful of the defendant's concern that to give the plaintiff salary and bonus information for some of UnumProvident's employees may infringe upon those employees' privacy interests. Unfortunately, such is often the case in litigation. The employees privacy interests can be safeguarded, however, by a protective order appropriately limiting the use and access of this information.

The undersigned does not find this decision at odds with the District Court's decision in *McCann v. Unum Life Insurance Company of America*, No. 1:02–cv–340 (E.D.Tenn. Nov. 26, 2003) (J. Collier). In *McCann*, the question of whether discovery should be allowed was first presented to the undersigned Magistrate Judge. I concluded discovery in an ERISA case would be appropriate under the same conditions as I do in this decision. *McCann v. Unum Life Insurance Company of America*, No. 1:02–cv–340 (E.D.Tenn. Oct. 3, 2003) (Mag. J. Carter). However, I concluded the *McCann* plaintiff had failed to identify any specific procedural deficiencies and had also failed to make a threshold evidentiary showing of procedural deficiencies sufficient to justify conducting discovery. The plaintiff had simply attached copies of newspaper articles concerning claims against UnumProvident. The District Court affirmed this decision finding "no error in the recitation of the facts nor any error in application of the

law," *Id.* at 2, and declined to modify or set aside any portion of the order. *Id.* at 3. The District Court concluded, "[p]laintiff's failure to identify a lack of due process or other procedural challenge against defendant in handling her claim precludes her from conducting discovery in this case." *Id.* at 6. Thus the District Court did not apply a blanket rule to prohibit discovery in ERISA cases. Rather, the District Court found discovery in *McCann* inappropriate because the plaintiff failed to identify specific procedural challenges. Unlike in *McCann*, the plaintiff in this case has sufficiently identified specific alleged procedural deficiencies and has come forward with threshold evidence of the same to justify limited discovery

Finally, the undersigned emphasizes that this decision applies *only* to the question of whether the plaintiff may conduct discovery—not to the question of whether certain evidence outside the record will be considered by the District Court in its review and not to the question of whether the Court's standard of review should change where there is outside evidence of denial of due process, conflict of interest, or bias on the part of UnumProvident. Those questions are premature at this stage and will be for the District Court to answer should the parties properly raise them.

### III. Discovery Pursuant to Federal Regulations

Under the regulations in effect at the time the plaintiff's benefits were terminated, the plan administrator is required during the review process to provide a copy of all "pertinent" documents to a claimant upon request. 29 C.F.R. § 2560.503–1(g) (2000). The preamble to those regulations defines "pertinent" documents as "all plan documents and other papers which affect

the claim." 42 Fed.Reg. 27426 (May 27, 1977).

During plaintiff's appeal of the decision to terminate her benefits, plaintiff's counsel sent a letter dated September 7, 2001, to UnumProvident requesting a copy of all pertinent documents relating to her claim (Admin.Record, UACL00272). Specifically, the plaintiff requested:

a copy of the entire claim file, including a copy of any plan documents, summary descriptions, policies, contracts or other relevant documents concerning this claim, including any medical records or other documents on which you based your decision, and any internal notes, documents, claims manuals or internal instructions relating to how the decision has been made in this case.

*Id.* The plaintiff's document request Nos. 5, 6, 7, 8, and 12 seek "pertinent" documents within the meaning of 29 C.F.R. § 2560.503–1(g) (2000) and are encompassed by the document request in counsel's September 7, 2001, letter. *See also Hernandez v. The Prudential Insurance Co. of America,* 2001 WL 1152835 (D.Utah Mar.28, 2001) (medical review criteria contained in manuals and other documents used to evaluate a claim and medical reviewers' credentials as well as their rationale in denying a claim are "pertinent" documents to which the claimant is entitled under 29 C.F.R. § 2560.503(g)). Accordingly, the plaintiff is also entitled to the information sought in request Nos. 5, 6, 7, 8, and 12 by virtue of 29 C.F.R. § 2560.503–1(g) (2000), and, to the extent defendant has not provided these documents already, defendant must do so within fourteen (14) days of entry of this order.

### *IV. Conclusion*

For the reasons stated and to the extent set forth herein, plaintiff's Motion to Compel is GRANTED in part and DENIED in part, and defendant's Motion for a Protective Order is DENIED in part and GRANTED in part.

SO ORDERED.