Cathleen MYERS, Plaintiff,

v.

The PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
Defendant.

Case No. 1:08–cv–22.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Sept. 22, 2008.

Daniel Seth Holliday, Eric L. Buchanan, R. Scott Wilson, Eric Buchanan & Associates PLLC, Chattanooga, TN, for Plaintiff.

David L. Johnson, Miller & Martin, Nashville, TN, for Defendant.

### MEMORANDUM AND ORDER

WILLIAM B. MITCHELL CARTER, United States Magistrate Judge.

#### I. Introduction

The Prudential Insurance Company of America (Prudential) has filed a motion for a protective order concerning discovery which has been requested of it by the plaintiff in this action. Pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 101 *et seq.*, plaintiff seeks judicial review of Prudential's denial of her disability claim. The issue presented by the defendant's motion and pending before the undersigned is whether, in an ERISA action for judicial review of a denial of benefits, a plaintiff must make an initial or threshold evidentiary showing of a procedural defect before the Court will allow discovery into the alleged procedural defect. For the reasons stated herein, I conclude the plaintiff does not and discovery into an alleged procedural defect without a "threshold showing" is appropriate within the parameters of Fed.R.Civ.P. 26. Accordingly, the defendant's Motion for a Protective Order on the grounds sought is DENIED.

#### II. Background

Plaintiff Cathleen Myers was employed by AAA Auto Club South in Tampa, Florida. By virtue of her employment, plaintiff was a participant in her employer's long term disability plan (the Plan). In August 2004, after making a timely application, the plaintiff was approved for long term disability benefits which she continued to receive until Prudential notified her in March 2006 that it was terminating her benefits. After her administrative appeals were unsuccessful, plaintiff filed this action on January 30, 2008 pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits due her under the terms of the Plan. Among other allegations, plaintiff's complaint avers:

- "The entity that made the decision to deny benefits would pay any funds due out of its own funds." (Complaint ¶ 16),

- "The entity that made the decision to deny benefits was under a perpetual conflict of interest because the benefits would have been paid out of its own funds." (Complaint ¶ 17),

- "The entity that made the decision to deny benefits allowed its concern over

its own funds to influence its decision-making." (Complaint ¶ 18),

- "The Defendants' decision-making process violated ERISA by failing to give the Plaintiff a full and fair review of the claim." (Complaint ¶ 20), and

- "The Defendants' decision-making process violated the duties imposed on ERISA fiduciaries, which require the Defendants to fully and properly communicate with a claimant and to provide a claimant a reasonable opportunity to submit evidence in support of her claim or in response to changing rationale used by the decision-makers to deny a claim." (Complaint ¶ 22).

In its answer to the complaint, Prudential admitted it was the administrator of the Plan (the Plan Administrator), *i.e.*, decides who is and isn't covered under the Plan, and pays benefits from its own funds (the payor). (Answer ¶ 16). Prudential denied operating under a conflict of interest or acting in any manner depriving the plaintiff of a full and fair review of her claim. (*See* Answer ¶¶ 17, 18, 20, 22).

### III. Analysis

#### A. Discovery in ERISA Benefits Denial Cases Generally

■ It is well settled that a court's review under ERISA of a decision by a plan administrator to deny benefits under a qualified employee welfare benefit plan is limited to the administrative record upon which the decision was based. *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845 n. 1 (6th Cir.2000); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir.1998). In *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir.1998), the Sixth Circuit laid out the one exception to this hard and fast rule: "The only exception to the above principle of not receiving new evidence at the district court level

arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.* at 618. Unfortunately, *Wilkins* did not clarify how this exception applied to the discovery process in ERISA cases, *i.e.* about what subjects and under what conditions would discovery be permitted. There is no definitive Supreme Court case on the issue and, as will be discussed, Sixth Circuit case law seems to have taken more than one approach.

■ An inherent conflict of interest exists when a party is both the plan administrator and pays benefits from its own funds. *Metropolitan Life Ins. Co. v. Glenn*, —— U.S. ——, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008), *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Such a conflict of interest is a factor which must be considered when reviewing a plan administrator's decision to deny benefits. *Id.* In the instant case, Prudential is operating under just such a conflict of interest because it decided whether plaintiff was covered under the Plan, and benefits to plaintiff under the Plan were and would be payable from Prudential's own funds. In such cases, however, the inquiry rarely stops there.

■ Plaintiff has submitted discovery requests, interrogatories and requests to admit designed to determine whether this conflict of interest reaches beyond the dual role assumed by Prudential as both the administrator and payor under the disability plan at issue in this case. The discovery requests generally are designed to determine whether Prudential had in place specific policies, practices, and/or procedures which might influence those persons involved in the review of disability claims

to deny such claims for the financial benefit of Prudential and/or for themselves. For example, one production request targets whether Prudential has an employee bonus system in place which might reward employees for helping Prudential to reach financial goals, goals which arguably could be affected by how many disability claims are evaluated. The question before the undersigned is whether the plaintiff is entitled to obtain such discovery.

The undersigned dealt with this identical issue in *Bennett v. Unum Life Insurance Company of America*, 321 F.Supp.2d 925 (E.D.Tenn.2004). At that time, there was no binding precedent for this Court on this particular issue. After discussing the relevant case law and the competing interests implicated by the plaintiff's request for discovery on the conflict of interest issue, *see id.* at 928–933, the undersigned concluded discovery into the alleged conflict of interest issue was appropriate only where "a claimant 1) identifies specific procedural challenges concerning a fiduciary's decision to deny or terminate ERISA benefits, and 2) makes an initial showing to the court that he has a reasonable basis to make such procedural challenges ..." *Id.* at 933. The undersigned further stated, "[a]ppropriate discovery is discovery that is strictly circumscribed to obtain potential evidence concerning the identified procedural challenges." *Id.*

In essence, *Bennett* required that a plaintiff seeking discovery into an alleged procedural defect such as a denial of due process, bias or conflict of interest to come forward with evidence to establish "a reasonable basis" to believe that such a procedural defect exists before discovery will be allowed into the defect. *Id.* at 932–33. A primary purpose of this "middle of the road approach," neither allowing unfettered discovery into procedural defects nor shutting down discovery altogether, was to balance the competing interests embodied in ERISA:

> There are two competing interests raised by the parties' motions. The policy rationale for constraining a court's review to the administrative record was articulated by the Sixth Circuit in *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir.1990): "A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal." (Internal citation omitted). At the same time, "ERISA was enacted to promote the interests of employees and their beneficiaries in employment benefit plans and to protect their contractually defined benefits." *Bruch*, 489 U.S. at 113, 109 S.Ct. 948 (internal citation omitted). In this regard, courts have the duty to review decisions denying ERISA benefits for conflicts of interest, bias, and denial of due process, *i.e.* procedural irregularities, on the part of the plan administrator or fiduciary. "Courts should be particularly vigilant in situations where ... the plan sponsor bears all or most of the risk of paying claims, and also appoints the body designated as the final arbiter of such claims. Under these circumstances, the potential for self-interested decision-making is evident." *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 n. 4 (6th Cir.2000).

*Id.* at 931.

Prudential argues that plaintiff Myers has not made the necessary initial or threshold showing of a specific procedural challenge required under *Bennett* to warrant allowing the plaintiff to receive dis-

covery on this issue. Prudential charges that plaintiff seeks merely to conduct an enormous fishing expedition in an effort to uncover evidence of procedural defects for which there is no basis to believe exist.

Plaintiff does not dispute Prudential's contention that she has made no "threshold showing" of a procedural defect beyond the dual roles that Prudential holds as administrator and payor of benefits. Instead, plaintiff argues that in light of recent Sixth Circuit case law, *Bennett* has been overruled and no initial or threshold showing is necessary to obtain the discovery requested. Prudential counters that other Sixth Circuit opinions exist which support its position. I first turn my attention to four Sixth Circuit cases decided after *Bennett* and relied upon by the plaintiff: *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286 (6th Cir.2005); *Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501 (6th Cir.2005), *Smith v. Continental Casualty Co.*, 450 F.3d 253 (6th Cir.2006), and *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416 (6th Cir.2006).

In *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286 (6th Cir.2005), the plaintiff's long term benefits were discontinued by her insurance company who was both the plan administrator and the payor of benefits. The *Calvert* Court held the standard of review, arbitrary and capricious, did not change because of the conflict of interest inherent in the plan administrator's dual role but stated that the conflict of interest was a factor to be considered in determining whether the plan administrator's termination of her benefits was arbitrary and capricious. *Id.* at 292–93. In considering the conflict of interest, the Court lamented that it

> would have a better feel for the weight to accord this conflict of interest if Calvert had explored the issue through discovery. While Calvert's counsel asserted that it was his understanding that

discovery is never permissible in an ERISA action premised on a review of the administrative record, an exception to that rule exists where a plaintiff seeks to pursue a decision-maker's bias. *See e.g., Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir.1998) ("The only exception to the ... principle of not receiving new evidence at the district court level [in an ERISA case] arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.") (emphasis added).

*Id.* at 293 n. 2.

In *Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501 (6th Cir.2005), the plaintiff argued the plan administrator's denial of the plaintiff's disability claim was arbitrary and capricious because the plan administrator relied primarily on the opinion of a doctor whose firm was regularly hired by the plan administrator to give independent opinions and therefore, the doctor "became part of the [plan administrator's] advocacy team." *Id.* at 507. The *Kalish* court acknowledged "physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers['] money and preserve their own consulting arrangement." *Id.* (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)). The *Kalish* Court, however, declined to discount the doctor's opinion on this basis stating:

> In the present case, however, Kalish has offered only conclusory allegations of bias with regard to Dr. Conrad. He failed to present any statistical evidence to suggest that, when retained by Liberty, Dr. Conrad has consistently opined that claimants are not disabled. *See id.*

(stating that a determination of bias "might be aided by empirical investigation"); *see also Calvert,* 409 F.3d at 293 n. 2 ("The Court would have a better feel for the weight to accord this conflict of interest if [the claimant] had explored the issue through discovery. While ... discovery is ... [ordinarily not] permissible in an ERISA action premised on a review of the administrative record, an exception to that rule exists where a plaintiff seeks to pursue a decision-maker's bias."). In the absence of such evidence, we are unable to conclude on this basis that Liberty acted arbitrarily and capriciously in deciding to credit the opinion of Dr. Conrad over that of Dr. Rasak. *See Nord,* 538 U.S. at 832, 123 S.Ct. 1965 (noting that "a treating physician, in a close case, may favor a finding of 'disabled' ").

In *Smith v. Continental Casualty Co.,* 450 F.3d 253 (6th Cir.2006), the district court had allowed fairly extensive discovery, including depositions, concerning the manner in which the insurance company evaluated disability claims. Relying on some of that discovery, *i.e.,* the deposition of a nurse involved in the review process, the Sixth Circuit determined that the insurance company's reviewing doctor did not receive all of plaintiff's medical records and remanded for a full and fair review. *Id.* at 265.

In *Moore v. Lafayette Life Ins. Co.,* 458 F.3d 416 (6th Cir.2006), the plaintiff brought an ERISA claim for judicial review after Lafayette Life Ins. Co. (Lafayette) denied his disability claim. At the initial conference pursuant to Fed.R.Civ.P. 16, the issue of discovery was raised, and the plaintiff asserted he should be permitted to conduct discovery into the substantive issue of the case as well as procedural challenges. The district court then ordered the parties to brief the issue of the proper scope of discovery, which they did.

The district court concluded that discovery would be limited to the procedural errors alleged by the plaintiff and that discovery into the substantive medical issues would not be allowed. The district court ultimately affirmed Lafayette's denial of this claim, and the plaintiff appealed raising as one issue the refusal of the district court to allow him discovery into not only the procedural challenges but also the substantive issues of his claim. The Sixth Circuit, after a careful discussion of *Wilkins,* determined that the district court had properly limited discovery to the procedural defects alleged by the plaintiff. *Id.* at 430–31. There was no discussion of any required threshold or initial showing before such discovery would be allowed. The *Moore* Court also held the district court had acted properly in refusing to allow the plaintiff to conduct discovery outside the administrative record on the *substantive* issues of plaintiff's claim because the discovery plaintiff conducted into the procedural defects had failed to raise a colorable claim of a due process violation. *See id.* at 430–31 ("If discovery into alleged procedural defects supports a plaintiff's allegations of due process denial, then a district court is obligated to permit discovery into more substantive areas of a plaintiff's claim"); *id.* at 431 (holding before discovery into *substantive* issues can be allowed, plaintiff must establish at least a "colorable" due process violation).

*Calvert* and *Kalish* certainly suggest that no threshold showing of evidence to support an allegation of bias, denial of due process or conflict of interest is necessary to conduct discovery into those mailers outside the administrative record. Indeed, as *Calvert* and *Kalish* illustrate, without such discovery, the dual role of plan administrator and payor has little effect on a court's review of a denial of benefits. Prudential, however, argues that the language in *Calvert* and *Kalish* supporting discovery outside the record is pure dicta and there-

fore not binding on the undersigned. Indeed, it does not appear that in either case the issue of discovery was timely raised or briefed at the trial or appellate level. Accordingly, I conclude that the aforementioned language is dicta, persuasive dicta, but dicta nonetheless.

*Smith* also appears to support the plaintiff's position that no threshold showing is required before some discovery will be allowed, but it was not clear from the opinion whether the administrative record itself revealed some discrepancy between the medical records provided by the plaintiff to the Plan Administrator and the medical records provided by the Plan Administrator to the reviewing doctor. Thus there may or may not have been an initial showing of a procedural defect before the district court allowed discovery.

On the other hand, the proper scope of discovery *was* a primary issue in *Moore,* and it does not appear from the *Moore* opinion that the plaintiff made or was required to make a threshold showing of a procedural defect in order to conduct discovery into that issue. Thus, implicit in the *Moore* Court's holding is that no threshold showing of a procedural violation is required before discovery into allegations of procedural violations such as due process defects, bias and conflict of interest issues will be allowed.

As was the case in *Bennett,* the defendant in this action can cite another line of cases which support its position on discovery. In *Likas v. Life Ins. Co. of N. America,* 222 Fed.Appx. 481 (6th Cir.2007), plaintiff appealed the termination of his disability benefits in an employee benefits plan (the plan) which was "issued and administered" by defendant Life Insurance Co. of North America (UNA). *Id.* at 483. During the benefits review, LINAS asked its sister corporation, Intracorp, to hire a physician to review the information in the plaintiff's file and offer an opinion, Intra-

corp hired one Dr. Cutler who opined the plaintiff was capable of light and sedentary work.

Before the district court on review, Likas sought to conduct discovery into the perceived conflict of interest arising from LINA's relationship to Intracorp. The district court refused to allow discovery. Plaintiff appealed the termination of his claim on several grounds including that the district court erroneously refused to allow discovery on the alleged conflict of interest. The Sixth Circuit affirmed stating,

> We agree with the District Court that Likas failed to provide sufficient evidence of bias-or of any procedural irregularity-to justify prehearing discovery. Likas supports his claim with conjecture, and a mere allegation of bias is insufficient to "throw open the doors of discovery" in an ERISA case. *See Putney v. Medical Mutual of Ohio,* 111 Fed.Appx. 803, 806–07 (6th Cir.2004); *Gindele v. Am. United Life Ins. Co.,* 2006 WL 3193429, at \*1–2 (E.D.Ky.2006) (citations omitted).

*Id.* at 486.

In *Putney v. Medical Mutual of Ohio,* 111 Fed.Appx. 803 (6th Cir.2004), a plaintiff denied medical benefits brought an ERISA action against the insurer. On appeal, the plaintiff argued the district court erred by refusing to allow the plaintiff to conduct discovery on an alleged procedural challenge to the insurer's denial of benefits. While acknowledging that a court can consider evidence outside the administrative record on procedural challenges to the administrator's denial of benefits, the *Putney* court also stated

> the exception does not apply here because Putney presented virtually no evidence of procedural violations .... the district court correctly held that Putney presented absolutely no evidence of bias. The record does not reflect that he provided any facts to support a claim that

discovery might lead to such evidence.... Putney's mere allegation of bias is not sufficient to permit discovery under [the] exception.

*Id.* at 807.

*Likas* and *Putney* unequivocally support Prudential's position regarding discovery, but neither are published in the official reporter thereby rendering them non-binding precedent. *See Gray v. Moore*, 520 F.3d 616, 624 n. 1 (6th Cir.2008), Sixth Circuit Rule 206.

Since *Bennett* was decided, trial courts within this jurisdiction have taken different approaches to discovery in ERISA cases. For example, decided after *Calvert*, *Kalish* and *Putney*, but before *Smith*, *Likas*, and *Moore*, *Bradford v. Metropolitan Life Insurance Co.*, 2006 WL 1006578 *4 (E.D.Tenn. April 14, 2006), held the threshold requirement still applied. *Accord, Ray v. Group Long Term Disability Policy*, 2007 WL 127983 *4 (S.D.Ohio 2007). At least one trial court has embraced this position reluctantly:

> Based on controlling precedent, the law in the Sixth Circuit remains that there is no automatic right to limited discovery as to procedural irregularities, and some initial showing of procedural irregularity must be presented before discovery will be allowed in ERISA cases. The court recognizes that this interpretation places the plaintiff in the untenable position of being required to present some evidentiary support for its allegation of procedural irregularities before allowing discovery of procedural irregularity. Nevertheless, that remains the law.

*McInerney v. Liberty Life Assur. Co. of Boston*, 2007 WL 1650498 *3 (W.D.Tenn.

Jun. 4, 2007).[1] On the other hand, *Platt v. Walgreen Income Protection Plan for Store Managers*, Slip op. *3–4, Docket No. 3:05–162 (Dec. 6, 2005), held no threshold evidence was required to conduct discovery into a conflict of interest reasoning that "absent some discovery, it would be difficult for most plaintiffs to do anything more than allege bias since the information concerning the potential bias is in the hands of the employer and/or the plan administrator."

When I consider all the Sixth Circuit cases discussed above, I find only one published case that directly addressed the issue of the proper scope and methodology of discovery in ERISA cases: *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416 (6th Cir.2006), wherein the Sixth Circuit concluded discovery at the trial court level into alleged procedural defects was proper. I further find the *Kalish* and *Calvert* cases to be highly persuasive in favor of allowing discovery absent any threshold showing. Were this not enough, there is other authority which leads the undersigned to conclude with confidence that the "threshold" requirement has had its day.

In the recent case of *Metropolitan Life Ins. Co. v. Glenn*, —— U.S. ——, 128 S.Ct. 2343, 2348–50, 171 L.Ed.2d 299 (2008), the Supreme Court reached the unsurprising conclusion that where an insurance company assumes the dual role of administrator of a disability plan as well as payor of funds under the plan, then a conflict of interest exists which does not change the court's standard of review but which constitutes a factor a court must consider when reviewing an insurance company's denial of a disability claim.[2] In so holding,

---

1. The undersigned, as is seen later in this opinion, respectfully disagrees with the *McInerney* Court regarding Sixth Circuit precedent and this issue.

2. Previously, in *Bruch*, the Supreme Court held that a conflict of interest existed where the claimant's *employer* was both the plan administrator and payor of benefits. In *Glenn*, the plan administrator was a profes-

the Supreme Court stated, "ERISA imposes higher than-marketplace quality standards on insurers" and it "underscores the particular importance of accurate claims processing by insisting that administrators provide a full and fair review of claims denials." *Id.* at 2350 (internal quotation omitted). Further, in examining *how* this particular conflict of interest was to be considered as a factor in reviewing the insurance company's denial of benefits, the Court stated:

> *Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict.* In principle, as we have said, conflicts are but one factor among many that a reviewing judge must take into account. Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts-which themselves vary in kind and in degree of seriousness-for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress.

*Id.* at 2351 (emphasis added). While this language, as it applies to discovery issues, may only be dicta, it is persuasive dicta. The undersigned reads this language from *Glenn* as a warning against establishing special evidentiary procedures to apply to interest/bias issues that arise in ERISA-denial-of-benefits cases. Instead, the Supreme Court exhorts the courts to examine and review each case on an individual basis, which would include fashioning an appropriate discovery plan based on the tools already available to parties in any other civil action. At least one other court shares my view of the recent *Glenn* case and its applicability to discovery issues in ERISA benefit denial cases.

> [T]he [Glenn] Court made clear its view that it is neither "necessary [n]or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." Accordingly, MetLife's notion that discovery is inappropriate in this case because "there is no evidence in the administrative record of any actual conflict," a dubious proposition to begin with before Glenn, is misguided. The question here, as in all cases, is whether the discovery sought is relevant in itself or "appears reasonably calculated to lead to the discovery of admissible evidence."

*Hogan–Cross v. Metropolitan Life Ins. Co.,* 568 F.Supp.2d 410, 413–14 (S.D.N.Y. 2008) (internal footnotes omitted).

■ *Bennett* established a special evidentiary procedure whereby a plaintiff would be allowed to conduct discovery in an ERISA case. *Bennett* placed the burden of production on the plaintiff to come forward with a small amount of evidence sufficient to establish a reasonable basis to believe that discovery would reveal other conflict of interest evidence beyond the administrator/payor role held by the defendant. This "threshold" requirement was intended to protect the goal of an expedient and affordable judicial review of ERISA benefit decisions by avoiding the infamous "fishing expedition." Instead, it has forced plaintiffs litigating within this jurisdiction to rely on evidence obtained in litigation from other jurisdictions, or

---

sional insurance company who argued unsuccessfully that its status as an insurance company was different enough from that of an employer that its exercise of dual roles did not create a conflict of interest.

worse, plaintiffs are left unable to investigate to any depth whatsoever the administrator/payor role of a defendant thereby jeopardizing the other goal of ERISA: "to promote the interests of employees and their beneficiaries in employment benefit plans and to protect their contractually defined benefits." *Bruch,* 489 U.S. at 113, 109 S.Ct. 948. In light of the *Kalish, Calvert,* and *Moore* decisions, and, in particular, the *Glenn* decision, the undersigned is convinced such an approach is no longer appropriate. Instead, the parties must rely on the well-established, time tested procedures and tools provided by the Federal Rules of Civil Procedure to investigate an alleged procedural defect, and the Courts must exercise the discretion granted them by these same Rules to define the appropriate parameters of discovery in cases such as this one.

■ This approach docs not mean oceanic fishing expeditions will be permitted. Much of discovery is a fishing expedition of sorts, but the Federal Rules of Civil Procedure allow the Courts to determine the pond, the type of lure, and how long the parties can leave their lines in the water. Rule 26(b)(1) provides in relevant part, "*[u]nless otherwise limited by court order,* . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).*" (Emphasis added).

■ Normally, in ERISA benefits denial cases, matters outside the administrative record are not discoverable because they are irrelevant to the overriding issue in such cases: Did the plan administrator act correctly in denying benefits based on the terms of the plan and the record before him?[3] *See Wilkins,* 150 F.3d at 615 (review of an ERISA benefits case, with the exception of "an ERISA claimant's procedural challenge to the administrator's decision," should not extend to "testimonial and/or other evidence that the administrator had no opportunity to consider.") Where, however, the plaintiff alleges a procedural defect in the administrative process, then matters pertaining to that process become relevant, as previously discussed. This fact does not, however, mean the entire universe of relevant evidence is opened up for discovery.[4] The court "*must* limit . . . the extent of discovery otherwise allowed by these rules" "where the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Rule 26(b)(2)(C)(iii) (emphasis added); *see also* Rule 26(b)(2) allowing the court to set limits on depositions, interrogatories and discovery of electronically stored information. Discovery into the substantive merits of a claim are still off limits—unless, of course, the court finds a serious procedural deficiency exists requiring substantive supplementation of the administrative record for a full and fair review. *See e.g., Killian v. Healthsource Provident Adm'rs,*

---

**3.** Of course, depending on the benefits plan, review may be either *de novo* review or an arbitrary and capricious standard of review.

**4.** For sake of review, " '[r]elevant evidence' means evidence having any tendency to make

the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

*Inc.*, 152 F.3d 514 (6th Cir.1998) (where plan administrator applied the wrong procedural rules to the plaintiffs request for pre-approval of medical treatment and rejected information from the plaintiff on the treatment's efficacy while continuing to gather information on its own, plaintiff was entitled to submit additional medical evidence for consideration). Always, however, discovery into alleged procedural defects must be strictly and carefully circumscribed to the needs of the particular case.

The need for discovery increases where the insurance company serves as plan administrator as well as payor of benefits. *See University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 n. 4 (6th Cir.2000) ("Courts should be particularly vigilant in situations where ... the plan sponsor bears all or most of the risk of paying claims, and also appoints the body designated as the final arbiter of such claims. Under these circumstances, the potential for self-interested decision-making is evident."). That need increases even more where the decision of the insurance company is given significant deference by means of the arbitrary and capricious standard of review, a standard of review provided for by the ERISA plan at issue which is generally written by the insurance company.[5] In all cases, as previously stated, the extent and scope of discovery allowed must be considered on a case by case basis given the particular needs of each case.

### B. *Discovery in This Case*

Plaintiff has propounded on defendant eight interrogatories, seven requests for production, and six requests to admit. Relying on *Bennett*, the defendant took the position that any discovery was inappropriate in this case because, as plaintiff has admitted, plaintiff made no threshold showing to justify allowing discovery pursuant to *Bennett*. Based on *Bennett*, defendant's position and decision not to address the merits of each discovery request was reasonable. However, now that it is clear the undersigned will allow discovery in this case even absent the "threshold showing," it is appropriate to give the defendant time to examine each discovery request and to answer the discovery or to respond with appropriate objections. In the hope of facilitating some resolution to this motion, I am putting the parties on notice that I am disinclined at this point to allow discovery of the personnel files and pay records of defendant's employees on the ground that it is overly burdensome, *i.e.*, its intrusiveness outweighs its likely benefit and thereby exceeds the needs of the case given its current posture. I am inclined to find that plaintiff is entitled to know generally if the defendant had at any time relevant to this case, any type of incentive, bonus, or reward program or system, formal or informal, for any employee(s) involved in any meaningful way in reviewing disability claims. Such information should not be difficult to answer, and also gives the plaintiff important information about any bias reviewing employees may or may not have had. Based on the answer to this question, more pointed discovery regarding those specific individuals involved in the review of plaintiff's claim may or may not be appropriate. Similarly, I am also disinclined to allow discovery of pay records and personnel files of the individual physician who reviewed plaintiff's claim, but the identity of the physician's employer (assuming it to be other than the defendant) and information regarding the temporal and financial depth

---

**5.** Plaintiff has alleged the judicial standard of review is *de novo*. (Complaint ¶ 15). Defendant has denied this assertion. (Answer ¶ 15). Thus, I conclude it is the defendant's position that the judicial standard of review is arbitrary and capricious.

of the employer's relationship to the defendant is probably appropriate.

Accordingly, it is ORDERED defendant shall have **thirty (30) days** from entry of this Order to answer or to make objections under the Federal Rules of Civil Procedure to the discovery requests propounded on it by the plaintiff.

SO ORDERED.